Argued September 21, affirmed October 19, petition for
rehearing denied November 15, 1972, petition for review
allowed January 30, 1973
(See later issue Oregon Reports)

# STATE OF OREGON, *Respondent*, v. TITUS SERVON SERRELL (No. C 72-02-0466 Cr), *Appellant*.

501 P2d 1324

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

Defendant was convicted by a jury of illegal sale of narcotics, viz., heroin, in violation of former ORS 474.020 (repealed Oregon Laws 1971, ch 743, § 432).

On appeal he contends that the trial judge erred:

(1) In denying his motion to dismiss for failure to grant him a speedy trial;

(2) In failing to make provision for him to listen to his trial by use of sound equipment after he had been removed from the courtroom for allegedly disruptive conduct;

(3) In instructing the jury that "[e]very witness is presumed to speak the truth";

(4) In failing to instruct the jury that if the state presented less satisfactory evidence it should be treated with distrust; and

(5) In failing to instruct the jury it could not find defendant guilty on the basis of an accomplice's testimony.

The state's evidence was that on September 27, 1971, an undercover officer assigned to the Narcotics Detail of the Portland Police Bureau met the defendant by prearrangement at a residence in Portland. The officer told defendant he wanted to purchase two bags of heroin. The defendant reached into his pocket and handed the officer two balloons containing heroin and the officer gave the defendant a $20 bill and a $5 bill in payment.

The officer had arranged to meet the defendant through an individual named Simon Barber. The officer testified that he had been invited to come into the house by Barber who was one of the residents of the house.

The indictment in this case was not returned until February 15, 1972. The state contends that the delay was because the officer who bought the narcotics from the defendant would have had to disclose his identity which would have ended his usefulness as an undercover agent.

■ (1) The trial judge did not err in denying defendant's motion to dismiss for lack of a speedy trial. The time interval involved (141 days), between the sale of heroin charged in the indictment and the return of the indictment, was not excessive. Defendant failed to establish that he had been prejudiced thereby.

■ As we observed in *State v. Griffin,* 7 Or App 19, 489 P2d 985 (1971), while there may be circumstances where long, unexplained delay between act and indictment may result in prejudice, the record fails to establish any prejudice here. Defendant's statement that he was unable to recall on March 24, 1972, the date his motion was heard, where he had been on the date of the alleged sale, would not be sufficient to show such prejudice. *State v. Griffin,* supra, does not require a contrary holding in this case.

The undercover officer testified that he was assigned to investigate narcotics in the Albina area of Portland in August 1971, where this sale occurred; that his assignment to this area ended in early February 1972, at which time he presented the results to the grand jury.

■ (2) The trial judge did not err in failing to make provision for defendant to listen to his trial by use of sound equipment after he had been removed from the courtroom for disruptive conduct.

The circumstances involving this asserted error were as follows: On the day of the trial defendant was

present in court with his attorney. Although represented by counsel, it appears that defendant himself had prepared and filed belatedly a host of motions concerning the proceeding. Defendant's attorney invited the court's attention to defendant's personal motions. The court responded and stated that it had read them and that all were overruled. The defendant objected and started to argue his motions, pro se. The court once more advised defendant that his motions were overruled. Defendant then demanded the right to call witnesses in support of his motions, interrupted his counsel in mid-sentence and again attempted to argue his motions. The court admonished defendant to let his attorney handle the proceedings. Notwithstanding defendant shortly resumed arguing his motions. The following is part of that colloquy:

"* * * * * *

"THE COURT: Well, do you want to try this case before the Court?

"THE DEFENDANT: No. What I want to do, Your Honor, is here, have a hearing on all my motions. I have requested the minutes of the Grand Jury. I requested—requested—requested, contested the indictment because there is no signature endorsed upon the indictment, only the deputy district attorney. This is not proper and I haven't had any ruling on that, so I am—

"THE COURT: Those motions have already been denied. We are going to go to trial.

"THE DEFENDANT: I am not going to trial now.

"THE COURT: (To the Clerk) Bring a jury in.

"THE DEFENDANT: Let's go, man, no I am not going, man, you have to handcuff— (starting to exit the courtroom)—

"THE COURT: Just a minute.

"THE DEFENDANT: I am not going to my trial. (Custodial deputy holding on to the defendant, preventing him from exiting.)

"THE COURT: Just a minute.

"THE DEFENDANT: There is no 'Just a minute,' Your Honor.

"THE COURT: I want to caution you about something, and you haven't had any legal advice on this. This Court has the power of contempt on you.

"THE DEFENDANT: Yes; yes, sir, I realize the — have your contempt.

"THE COURT: Let's explain just a little bit more for the record. If you should be convicted and I put you in contempt of this Court, I could give you a six-month jail sentence in the county jail.

"THE DEFENDANT: That is all right.

"THE COURT: And I can run this consecutively after you serve your full sentence in the penitentiary.

"THE DEFENDANT: I am not going to proceed with a prejudiced judge. Just one man's testimony, come up here and — my word, I can impeach his testimony.

"THE COURT: We are going to have a jury come in here and try—

"THE DEFENDANT: Do it the other way, Your Honor.

"THE COURT: All right. Let the record show that I am committing this man to the county jail upstairs. We are going to call a jury.

"Mr. Ransom, you prepared to represent this defendant? He has placed himself in an incorrigible position.

"THE DEFENDANT: I am not going to sit by—

"THE COURT: I just put you in direct contempt of this Court and we will have a hearing after the completion of this trial.

"(To the clerk)  Call a jury.

"You want to make any further record, Mr. Ransom?

"(Thereupon the custodial deputy escorted the defendant out of the courtroom.)

"* * * * *."

According to the record, after defendant was returned to his upstairs cell, the court, communicating with defendant through his counsel, on two separate occasions informed defendant that he could return to the courtroom to attend the proceedings and to testify in his own behalf if he chose. The first occasion was before commencement of the trial, and the second was after the state rested. On both occasions his counsel reported that he had conferred with defendant in his cell and that defendant refused to return to the courtroom.

■ Defendant contends that the trial judge erred in failing to make provision for defendant to listen to his trial by use of sound equipment. This contention is without merit. The trial court was under no such duty. The transcript excerpts set forth above amply justify the action of the trial court in first cautioning the defendant and then ordering that he be removed from the courtroom. *Illinois v. Allen,* 397 US 337, 90 S Ct 1057, 25 L Ed 2d 353 (1970); *State v. Williams,* 11 Or App 227, 501 P2d 328, Sup Ct *review denied* (1972).

Unlike the defendant in *State v. Verna,* 9 Or App 620, 498 P2d 793 (1972), and *State v. Dalebout,* 4 Or

App 601, 480 P2d 451, Sup Ct *review denied* (1971), defendant made no timely demand to represent himself, either prior to or at the time he was removed from the courtroom.

Neither *Allen* nor *Verna,* the only cases cited by defendant, is authority for the proposition that a recalcitrant defendant who is removed from the courtroom as a result of his own recalcitrance is entitled to have the trial proceedings broadcast to him.

■ (3) No error is presented for review by defendant's third assignment because defendant took no exception to the instruction which he now complains of on appeal. *State v. Jorgensen,* 8 Or App 1, 13, 492 P2d 312 (1971), Sup Ct *review denied* (1972). Defendant's remaining assignments of error are likewise without merit.

■ (4) The trial court's refusal to give defendant's requested instruction that if either party presented weaker and less satisfactory evidence when it appears that stronger and more satisfactory evidence was within the power of the party to produce, the evidence offered should be viewed with distrust, was not error in the context of this case. The defendant did not testify nor did he offer any testimony by others in his defense. As our Supreme Court observed in *State v. Kniss,* 253 Or 450, 452, 455 P2d 177 (1969), in criminal cases trial courts should rarely, if ever, give such an instruction where defendant does not testify in his own defense.

■ (5) Lastly, the undercover police officer who testified that he purchased the narcotics from defendant was not an accomplice of defendant. *State v. Winslow,* 3 Or App 140, 144-50, 472 P2d 852 (1970) ; *State v.*

*Nasholm,* 2 Or App 385, 387-89, 467 P2d 647, Sup Ct *review denied* (1970). The court therefore did not err in failing to instruct that the officer would be an accomplice in allegedly buying the heroin from defendant and that his testimony must therefore be corroborated.

Affirmed.