Argued March 21, affirmed April 17, 1978

STATE OF OREGON, *Respondent,*
*v.*
ROBERT ROLAND PHILPOTT, *Appellant.*
(No. 2189-C, CA 8906)
577 P2d 96

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

William F. Nessly, Jr., Assistant Attorney Gereral, Salem, argued the cause for respordent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Defendant appeals his conviction for burglary in the first degree, assigning as error the denial of his pre-trial motion to suppress evidence, and the giving of a jury instruction based upon ORS 17.250(6) and (7),[1] to which he made timely objection.

At approximately midnight, Officer Shaw, a Vale police officer, was driving to work when he observed a person step from an area of picnic benches on the Dairy Queen Drive-in lot, and cross the street in front of his vehicle. The person was wearing a Western-style shirt, hat, boots and Levi-type pants, and as he walked, he had very little body movement, holding his arms close to his body and concealing a cylindrical object along the side of his leg, all of which drew the special attention of Shaw. The person got into a green Ford pickup truck, the license number of which was noted by Shaw.

Shaw proceeded on to the police station, picked up the city police vehicle and Officer Wall, and together they returned to the Dairy Queen where they found the window in the women's restroom broken. There was broken glass on the restroom floor; drops of blood were found behind the counter in the dining area, the hall and the entrance to the kitchen. The framing around a back door had been splintered and chipped. A check on the pickup's license number revealed that the truck was registered to defendant. As the two officers

---

[1] ORS 17.250 (6) and (7) provide:

"The jury, subject to the control of the court, in the cases specified by statute, are the judges of the effect or value of evidence addressed to them, except when it is thereby declared to be conclusive. They are, however, to be instructed by the court on all proper occasions:

"* * * * *

"That evidence is to be estimated, not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict; and, therefore,

"That if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust."

stood in the Dairy Queen, Shaw observed defendant drive by in the pickup, and he asked Wall to follow the truck in the patrol car. Wall lost sight of the truck, but shortly located it parked near the Golden Slipper, a bar located about one block from the Dairy Queen. Wall contacted defendant in the men's restroom of the bar, and asked him if he would step outside and talk.

At that time, Officer Wall noticed some bloodstains on defendant's pants. Officer Shaw arrived and read defendant the *Miranda* warnings, and defendant consented to a search of his truck. The officers found a flashlight, small pieces of glass on the front seat, and a crowbar and flat bar in the bed of the pickup.

When asked whether he had seen anyone near the Dairy Queen that night, defendant stated that he had seen two youths leave the area in a two-tone 1958 Chevrolet. Immediately before first observing defendant at the Dairy Queen, Shaw had stopped and talked with Officer Wall's wife near the Dairy Queen; she was driving a 1958 two-tone Chevrolet.

Shaw asked defendant if he would accompany him to the Dairy Queen, and defendant did so. After arriving at the Dairy Queen, Shaw noticed that defendant's shirt was torn, and that some bloodstains were on the shirt front; he also noticed a scratch on defendant's right arm, which appeared to be fresh.

Malheur County deputy sheriff Thompson and the drive-in owner arrived on the scene; the police continued their investigation while defendant sat on a bench near the building. On two occasions, defendant stated that he wanted to leave, but each time deferred to Shaw's request that he stay. Subsequently, defendant began to walk away; Shaw followed him, placed his hand on defendant's arm and stepped in front of him, and told him he was needed for further questioning. Defendant became noisy and upset, poked Shaw in the chest with his finger, stating that he had whipped bigger and better policemen. At this point, defendant

was arrested for disorderly conduct, handcuffed and walked to the police station. While Shaw was booking defendant on that charge, the deputy sheriff radioed him from the Dairy Queen that he had found a snap-type shirt button on the sill of the broken window at the Dairy Queen, which appeared to match those on defendant's shirt. Wall noticed that a button was missing from defendant's shirt. Defendant was then advised that he was under arrest for burglary.

All of the foregoing evidence was adduced at the suppression hearing.

# I

Defendant moved to suppress the pants, shirt, hat and boots seized by the police at the time of defendant's arrest, as well as testimonial evidence relating to observation of defendant's clothing, contending that they were the fruits of an unreasonable detention under ORS 135.615(2). We need not consider defendant's contention that even if the initial stop, which occurred in the men's room of the Golden Slipper bar, was valid, the detention by the police was unreasonable both as to time and area. When the police confronted defendant in the men's room, they knew a crime had been committed. Other information they had at that time was sufficient to give rise to a reasonable suspicion that defendant had committed that crime. The initial inquiry of defendant was in the immediate vicinity of the bar where the stop occurred. When, immediately following the stop, the officer observed blood on defendant's trousers, heard defendant's untruthful response to a question put to him by the officer, and found a crowbar, flat bar, flashlight and small pieces of glass in defendant's pickup, the reasonable suspicion had ripened into probable cause to believe that defendant had committed the crime. All of the facts and circumstances known to the police at that time would have led a reasonable prudent person to believe that defendant had committed the crime. *State v. Jones,* 248 Or 428, 435 P2d 317 (1967). The

police had probable cause to arrest defendant at that time and charge him with burglary. The fact that the initial arrest was for disorderly conduct does not render illegal the subsequent arrest for burglary 30 minutes later. *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969).

For the same reasons, the seizure of the evidence was valid, and the motion to suppress it was properly denied.

## II

2. At trial, defendant put on witnesses in this defense, but did not testify in his own behalf. The court gave the following instruction:

> "You are instructed that evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict, and therefore if weaker and less satisfactory evidence is offered by either party when it appears that stronger and more satisfactory evidence was within the power of the party to produce, the evidence offered should be viewed with distrust."

Both the Supreme Court and this court have stated that such an instruction should rarely, if ever, be given in a criminal case when the defendant does not testify, but it does not appear that any case has held the giving of the instruction to be reversible error. *See State v. Kniss,* 253 Or 450, 455 P2d 177 (1969); *State v. Serrell,* 11 Or App 324, 501 P2d 1324 (1972), *aff'd* 265 Or 216, 507 P2d 1405 (1973). Nor does it appear that any case has held the instruction to be proper in a criminal case, although the Supreme Court has stated that it "should be avoided unless it is limited to evidence offered by the state." *State v. Holleman,* 225 Or 7, 8, 357 P2d 264 (1960); *Cf. State v. Patton,* 208 Or 610, 303 P2d 513 (1956). In *State v. Thomson,* 203 Or 1, 278 P2d 142 (1954), the Supreme Court, in reversing a conviction on other grounds, stated that the instruction should not be given on retrial. Even where the

defendant has testified, the Supreme Court has stated that such an instruction is "abstract and thus to be avoided." *State v. Jordan,* 238 Or 184, 187, 393 P2d 766 (1964). This court has also stated that under those circumstances the instruction is abstract. *State v. Gwyther,* 4 Or App 473, 479 P2d 248, *rev den* (1971); *State v. Dixon,* 5 Or App 113, 481 P2d 629, *rev den* (1971), *cert den* 404 US 1024 (1972).

This instruction not only appears to be an outcast, but in the context of this case it suffers from a similar infirmity to that given in *Griffin v. California,* 380 US 609, 85 S Ct 1229, 14 L Ed 2d 106 (1965), which was held to violate defendant's rights under the Fifth Amendment to the United States Constitution. In *Griffin,* the instruction was directed squarely at inferences which the jury could draw from defendant's failure to testify, or from defendant's failure to deny or explain certain evidence if he did testify. While the instruction given in the case before us is not so directly aimed at defendant, a reasonable interpretation of it would be that since defendant was in the best position to explain what, if anything, he had to do with the events involved at the trial, the evidence he put on, short of testifying himself, "should be viewed with distrust."

We hold that the giving of the instruction was clearly erroneous. It remains to be determined whether that error, even though constitutional error, requires reversal. From the record, we conclude that it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 US 18, 87 S Ct 824, 17 L Ed 2d 705, 24 ALR3d 1065 (1967). The evidence of defendant's guilt was overwhelming. In addition to the evidence adduced at the suppression hearing, there was evidence at the trial that a button was missing from defendant's shirt, and that the button found in the groove of the sill of the window that was broken at the Dairy Queen matched the buttons on defendant's shirt; defendant's blood-type matched the blood-type found at the scene;

defendant's hand was cut, in addition to the scratch on his arm; only quarters were taken from the Dairy Queen, and after the time of the entry defendant had paid for a drink at the Golden Slipper bar with quarters.

The evidence, taken as a whole, is convincing of defendant's guilt. The giving of the erroneous instruction was not reversible error. *Chapman v. California, supra; State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973).

Affirmed.