Argued and submitted July 27, 1981, affirmed February 8, 1982

STATE OF OREGON,
*Respondent,*
*v.*
STEVE SHURAVLOFF LOYER,
*Appellant.*

(No. 79-11-22, CA A20090)

640 P2d 631

Howard Clyman, West Linn, argued the cause and filed the brief for appellant.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Defendant appeals from his conviction of kidnapping, sodomy and two counts of rape in the first degree. His sole assignment of error is that the court erred in admitting testimony by the state's psychiatrist offered to rebut defendant's proffered defenses of mental disease or defect excluding or diminishing defendant's responsibility for the crimes charged. Defendant's contention is grounded on the failure of the state's psychiatrist to inform defendant of his rights against self incrimination prior to the interview.

The essential facts so far as material here may be summarized as follows:

Following his arraignment on the above charges, defendant gave written notice of his intent to rely on the defense of mental disease or defect excluding responsibility and on the partial defense of mental disease or defect which diminishes responsibility. The state filed a notice to have defendant examined by a state psychiatrist and moved that defendant make himself available for an examination by Dr. Harold Cloyd at the doctor's office at the Oregon State Hospital in Salem. ORS 161.315. In response, defendant informed the court that he would make himself available for such an examination, with the understanding, as agreed between counsel, that defendant would not be required to stay overnight at the hospital and would provide his own transportation to and from the hospital.

On trial to the court, defendant called as an expert witness Dr. Roberts, defendant's treating psychiatrist, who testified, based on approximately 18 sessions with defendant, that defendant suffered from schizophrenia, chronic undifferentiated type, as a result of which defendant lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law at the time of the crime alleged. The state, seeking to rebut Dr. Roberts' testimony, called state psychiatrist Dr. Cloyd. Defense counsel objected to Dr. Cloyd's testimony, based on the failure of the doctor to warn defendant, at the start of their interview, of defendant's right against self-incrimination. The defense objection extended to any evidence, including opinions and conclusions, offered by

Dr. Cloyd based on the interview, absent a knowing and voluntary waiver of rights by defendant.

The trial judge held that, although no competent evidence was offered to show that defendant had been warned of his constitutional rights, the state could introduce evidence of Dr. Cloyd's interview and his conclusion based on the interview. Because Dr. Cloyd became ill and was unavailable to testify until an uncertain future date, the state asked for a continuance, which was opposed by defendant, but granted by the court. Thereupon, to avoid delay, counsel agreed that, in lieu of requiring Dr. Cloyd to appear, the state could offer his report in place of his testimony, though defendant's objection to any evidence based on Dr. Cloyd's interview was preserved. The report was admitted into evidence. In it, Dr. Cloyd outlined defendant's "story of the incident" and concluded that defendant did not lack substantial capacity to understand the criminality of his act, or to conform his conduct to the requirements of the law. This was the only expert evidence offered by the state to rebut defense evidence of mental disease or defect excluding or diminishing responsibility.

In *State v. Phillips,* 245 Or 466, 475, 422 P2d 670 (1967), the court held that when a defendant pleads not guilty by reason of insanity the state is entitled to a mental examination. The legislature codified that rule and adapted it to the newly enacted defense of mental defect. *See* ORS 161.315. In *State v. Corbin,* 15 Or App 536, 516 P2d 1314, *rev den* (1974), this court reversed defendant's murder conviction for the reason, *inter alia,* that the unrepresented defendant had not been warned prior to a psychiatric examination by the state's psychiatrist that he had a right to refuse to talk to the psychiatrist and to have his attorney present.

Assuming *arguendo* that in the case at bar the state's psychiatrist failed to advise defendant of his rights, we conclude nevertheless that defendant's contention cannot be sustained. The facts in *Corbin* are clearly distinguishable from the facts at bar. There defendant was subjected to a psychiatric examination by the state prior to appointment of defense counsel. In holding that *Miranda* warnings were required under the facts of *Corbin,* this

court's principal concern was that a defendant being examined by a state's psychiatrist be made aware that any statements that he might make could be used against him, that he had a right to have an attorney present during the examination and "that the psychiatrist is employed by his adversary and is not presumably his healer." 15 Or App at 546.

In the case at bar, the circumstances surrounding the state's psychiatric examination were radically different. Here, defendant had counsel, had already been examined by his own expert, Dr. Roberts, and had given formal notice of his intent to rely on a mental disease or defect defense. On the state's motion for its own examination, defense counsel was so informed and presumably could have advised his client as he saw fit. Under these circumstances, the possibility that defendant could have misunderstood the relationship between himself and the examining psychiatrist was absent. Nothing in *Corbin* or subsequent cases indicates that its requirements were intended to apply to such a controlled situation which was actually initiated by defendant with aid of his counsel.[1]

Affirmed.

---

[1] The state asserts that *Estelle v. Smith,* 451 US 454, 101 S Ct 1866, 68 L Ed 2d 359 (1981), sheds light on this question in the state's favor. That case dealt with the use of psychiatric testimony during the penalty phase of a capital offense trial in Texas. The Court held that the Fifth Amendment's privilege against self-incrimination and the Sixth Amendment's right to counsel forbid admission at such proceedings of evidence derived from a state-initiated psychiatric interview of a defendant who was not warned, prior to the interview, of his right to silence, possible use of the statements against him and his right to counsel. In formulating the ruling, however, the Court noted:

"Nor was the interview analogous to a sanity examination occasioned by the defendant's plea of not guilty by reason of insanity at the time of the offense. When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the state of the only effective means it has of controverting his proof on an issue that he interjected into the case." 451 US at 465, 101 S Ct at 1874.

As Judge Tanzer pointed out in his dissent in *State ex rel Ott v. Cushing,* 291 Or 355, 363, 630 P2d 861, (1981), all that *Estelle* means for Oregon jurisprudence is that the *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968) line of cases lacks any foundation in the United States Constitution. Nonetheless, that line is binding on this court.