Argued and submitted September 13, resubmitted In Banc December 22, 1982, affirmed January 19, reconsideration denied March 11, petition for review allowed April 12, 1983 (294 Or 749) See 295 Or 640, 669 P2d 1112 (1983)

STATE OF OREGON,
*Respondent,*
*v.*
DENNIS LEE MAINS, wtn
Dennis Lee Main,
*Appellant.*

(No. 74-0191, CA A24630)

657 P2d 220

Michael E. Swaim, Salem, argued the cause and filed the brief for appellant.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, Thornton, Senior Judge, and Van Hoomissen, Judge.

THORNTON, S. J.

## THORNTON, S. J.

Defendant was convicted of murder after a jury trial in 1974 and sentenced to life imprisonment. His conviction was affirmed on appeal. He obtained post-conviction relief in April, 1982, because of the inadequate assistance of appellate counsel in failing to raise certain issues. The post-conviction court granted defendant a "delayed appeal" on the issues not raised on the initial appeal. *See Shipman v. Gladden,* 253 Or 192, 453 P2d 921 (1969). The propriety of the ordered delayed appeal is not before this court, because the state did not appeal from the post-conviction judgment.

Defendant raises three issues. First, he contends that the trial court erred in denying his motion to suppress testimony of a psychiatrist on the ground that the psychiatrist had not advised defendant of his *Miranda* rights before the examination.

■ Before trial, defendant obtained an order authorizing an examination by a psychiatrist at public expense to determine his mental state at the time of the alleged murder. He was given a second examination at public expense after another motion. Soon after, he gave notice of his intent to introduce evidence at trial on the issue of criminal responsibility pursuant to ORS 161.309(3) and 163.135. In response, the state obtained an order requiring defendant to present himself for a psychiatric examination. *See* ORS 161.315. The order provided that defendant's attorney could be present at the examination.

The examination was conducted by Dr. Bassford at his office. Dr. Bassford testified that before the examination he told defendant that the information provided could be used in court, which Dr. Bassford stated defendant understood. Dr. Bassford testified that defendant told him that he had discussed the examination with his attorney; that he did not threaten or offer any inducement to defendant to have him respond and that he told defendant the report filed at the conclusion of the examination might or might not be in his favor. Dr. Bassford did not, however, give defendant the *Miranda* warnings before the examination. On cross-examination, Dr. Bassford testified as follows:

"Q You indicated, Doctor Bassford, that you told [defendant] the purpose of the interview was to determine his mental state. Is that —

"A Yeah, to establish the psychological condition, his mental state. His response at that time was that he was sure that there was something psychologically wrong, and he was glad to have the interview.

"Q He felt there was something wrong with him, you say, and he was glad to have the interview?

"A Yes, he was.

"Q Because he thought you might be able to help him?

"A Yes."

Defendant argues that *State v. Corbin,* 15 Or App 536, 516 P2d 1314 (1973), *rev den* (1974), requires suppression of the psychiatric report and testimony. The facts in *Corbin* are clearly distinguishable from the facts in the present case. *See State v. Loyer,* 55 Or App 854, 640 P2d 631 (1982). Our analysis in *Loyer* is equally applicable here:

"In the case at bar, the circumstances surrounding the state's psychiatric examination were radically different. Here, defendant had counsel, had already been examined by his own expert, Dr. Roberts, and had given formal notice of his intent to rely on a mental disease or defect defense. On the state's motion for its own examination, defense counsel was so informed and presumably could have advised his client as he saw fit. Under these circumstances, the possibility that defendant could have misunderstood the relationship between himself and the examining psychiatrist was absent. Nothing in *Corbin* or subsequent cases indicates that its requirements were intended to apply to such a controlled situation which was actually initiated by defendant with aid of his counsel." 55 Or App at 858. (Footnote omitted.)

Defendant's self-serving statement to Dr. Bassford that he felt that there was something "psychologically wrong" with him and that he was glad to talk does not require a different result. Defendant knew that the results of the examination could be used in court. He had also discussed the examination with his attorney, and his attorney was allowed to be present at the interview. He had already been examined twice by his own expert. Under the circumstances, the concern expressed in *Corbin* over defendant's

misunderstanding of his relationship with the examining psychiatrist is absent. *State v. Loyer, supra.*

■    Defendant next argues that the court erred in giving the following jury instruction over his objections:

"Evidence is to be estimated by its own intrinsic weight. Evidence is to be weighed not only by its own intrinsic weight but also in the evidence where it is in the power of one side to produce and the other side to contradict. Therefore, if weaker and less satisfactory evidence is offered when it appeared that stronger and more satisfactory evidence is within the power of the parties to produce, the evidence offered should be viewed by you with distrust."

Defendant did not testify. At the time the instruction was given, although the Supreme Court had held that the above instruction should rarely, if ever, be given in criminal cases, no case had held that giving the instruction was reversible error. *See State v. Kniss,* 253 Or 450, 455 P2d 177 (1969); *State v. Holleman,* 225 Or 7, 8, 357 P2d 264 (1960); *State v. Philpott,* 33 Or App 589, 594, 577 P2d 96 (1978). Several years after this case was tried, we held in *State v. Greene,* 36 Or App 281, 583 P2d 1171, *rev den* 284 Or 235 (1978), that a similar instruction on weaker and less satisfactory evidence unnecessarily called attention to defendant's failure to testify and was ground for reversal:

"Defendant did not testify. The Supreme Court has held that the weaker and less satisfactory evidence instruction should rarely, if ever, be given where defendant does not testify in his own defense. *State v. Kniss,* 253 Or 450, 455 P2d 177 (1969). *See also State v. Serrell,* 11 Or App 324, 501 P2d 1324 (1972), *aff'd* 265 Or 216 (1973). This was not one of those rare instances. Furthermore, the court's action was particularly harmful here where the trial court did not give a curative instruction to the effect that defendant had no burden of proof. *See State v. Marling,* 19 Or App 811, 529 P2d 957 (1974) [*rev den* (1975)].

"The instruction unnecessarily called attention to defendant's failure to testify, was therefore error, and requires reversal." 36 Or App at 287.

The weaker and less satisfactory evidence instruction suffers from two basic infirmities. It could be interpreted by the jury as shifting the burden of proof to the defendant. It could also indirectly call to the attention of

the jury the defendant's failure to testify. While we agree with defendant that the giving of the instruction was erroneous, we conclude that under the circumstances here it does not require reversal.

The instructions taken as a whole did not improperly shift the burden of proof to defendant. There was evidence that defendant's conduct led to the death of the 15-month-old victim. As defendant acknowledges in his brief, "[T]he primary defense in the case was one of extreme emotional disturbance." The real issues for the jury were the defenses of extreme emotional disturbance,[1] mental disease or defect excluding responsibility[2] and partial responsibility or diminished intent.[3] Whether or not the state had the burden of proof as to extreme emotional disturbance or partial responsibility,[4] the court's instructions clearly indicated that the state did have that burden.[5]

---

[1] Former ORS 163.125(1)(b); the current version is ORS 163.135(1).

[2] ORS 161.295.

[3] ORS 161.300.

[4] The continuing validity of *State v. Stockett*, 278 Or 637, 565 P2d 739 (1977), holding unconstitutional ORS 161.305, which imposed on the defendant the burden to prove diminished or partial responsibility is debatable in light of the subsequent United States Supreme Court decision in *Patterson v. New York*, 432 US 197, 97 S Ct 2319, 53 L Ed 2d 281 (1977). *See State v. Burrow*, 293 Or 691, 699 n 8, 653 P2d 226 (1982). The court in *Patterson* upheld New York's murder statute that places the burden of proof on the defendant to prove that he was acting "under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse * * *," in which case the crime would be reduced to manslaughter. We need not decide the issue in this case because the court placed the burden of proof on the state in its instructions on this point. *See* n 5, *infra.*

[5] The court instructed:

"Under the law of this state, a homicide which would otherwise be murder is manslaughter when committed by the defendant while under the influence of extreme emotional disturbance which disturbance is not the result of his own intentional doing, reckless or criminally negligent act and for which disturbance there is a reasonable explanation. Therefore, in order for you to find the defendant guilty of murder, *the state must prove beyond a reasonable doubt that the defendant was not under the influence of such emotional disturbance or that such disturbance was the result of defendant's own intentional, knowing or reckless or criminally negligent act or that there was no reasonable explanation for such disturbance.* In considering whether there is a reasonable explanation for emotional disturbance, the reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the defendant's situation under the circumstancess as the defendant reasonably believed them to be. *If you find that the state has*

On the affirmative defense of mental disease or defect excluding responsibility, defendant had the burden of proof by a preponderance of the evidence. ORS 161.055(2); 161.305; *see Leland v. Oregon,* 343 US 790, 72 S Ct 1002, 96 L Ed 1302 (1952); *State v. Dodson,* 25 Or App 859, 551 P2d 484, *rev den* (1976).

Defendant produced numerous witnesses on his behalf, including several medical experts, to testify about defendant's mental state. An indirect comment on defendant's failure to testify was in no way crucial to the defense as it was in cases such as *State v. Greene, supra,* where the jury was called on to determine both whether the defendant had in fact committed the criminal act charged and, if he did, what was his mental condition at the time. Because the instructions as a whole did not improperly shift the burden of proof to defendant or impermissibly comment on defendant's failure to testify, we conclude that the giving of the weaker and less satisfactory instruction was harmless beyond a reasonable doubt. *Chapman v. California,* 386 US 18, 87 S Ct 824, 17 L Ed 2d 705 (1967); *State v. Philpott, supra.* In any event, we decline to apply *State v. Greene, supra,* retrospectively.

■ Defendant next contends that the trial court erred in denying a motion for mistrial and that the manner in which the trial was conducted violated his due process rights. These contentions are based on rulings made and questions asked of witnesses by the court during the trial. Rulings on motions for mistrial are largely within the discretion of the trial court. We conclude that the trial court did not abuse its discretion and that, considering the entire trial proceeding, defendant was not denied due process.

Affirmed.

---

*proven murder beyond a reasonable doubt but has failed to carry its burden of proof on the emotional disturbance issue,* the defendant is guilty of manslaughter only." (Emphasis supplied.)

Throughout the instructions the court also reminded the jury that the burden of proof for each element of the crime was on the state and that the burden did not shift to defendant.