Argued and submitted November 7, 2000, affirmed July 5, 2001

# CHURCH AT 295 S. 18TH ST., ST. HELENS,
*Petitioner,*

*v.*

# EMPLOYMENT DEPARTMENT,
*Respondent.*

## 00-TAX-00039; A109854

28 P3d 1185

Dean Lederer argued the cause for petitioner. On the brief were Daniel A. Hill and Adams, Day & Hill.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were

Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Petitioner, the Church at 295 S. 18th St., St. Helens (church), seeks judicial review of a final order of an Employment Department hearing officer holding that the church is an employer within the meaning of ORS 657.025 and is therefore liable for unemployment taxes. We affirm.

The hearing officer found the following facts. The church holds worship services on Sunday mornings and evenings and religious instruction classes on Wednesday evenings. Since 1996, Hubert Barton, who employs the title "evangelist," has led the Sunday worship services. That work includes teaching a class and delivering a sermon each Sunday morning and generally participating in the Sunday evening services. He also has provided teaching at the Wednesday meetings. Barton spends most of his time working at the church, but he does spend some time away. Occasionally, he has visited other churches in California and has spent time at a bible camp.

Barton does not maintain an office at the church. He operates from his home, using a table in his kitchen as an office. He uses a computer that he purchased with his own money. He has business cards that display his name and personal phone number.

The church collects from its members a tithe and then disburses the tithes—on average, approximately $1,000 per month—to Barton. It uses other collections for other church expenses. At least 80 percent of Barton's annual income comes from those tithes. He receives some additional income from his visits to other churches and from weddings and funerals.

The church considers Barton to be its evangelist, not its employee. It would end its association with Barton if he did not follow biblical doctrine or standards, however.

The Employment Department (department) learned that Barton regularly received tithes in exchange for his services as evangelist for the church. It requested regular reports from the church as an employer. The church refused to provide any information to the department. Over the

church's objections, the department prepared and submitted an employment tax registration for the church and estimated its tax responsibility. The church refused to pay and requested a hearing.

At the hearing, the church argued that: (1) it does not employ Barton; (2) if it does employ Barton, he is an independent contractor for whom no tax payments are required; and (3) requiring it to acknowledge that it is an "employer" violates its constitutional rights of free speech and free exercise of religion. The hearing officer concluded, on the foregoing findings of fact, that the church is Barton's employer, because it paid him for services that he provided. The hearing officer further concluded that Barton is not an independent contractor, because he failed to meet five of the eight requirements of the statutory exemption for independent contractors. Finally, the hearing officer held that requiring the church to acknowledge that it is an employer interferes with neither its right of free speech nor its right of free exercise.

■  On review, the church first argues that the hearing officer erred in concluding that it employs Barton. According to the church, the evidence shows that it has no governing body, exercised "very little control" over Barton's work, and paid him only tithes, not a wage or salary. The department argues that that evidence is beside the point, because the undisputed facts are that the church paid Barton to perform services for it. We agree with the department.

■  An "employer" must pay into the Unemployment Compensation Trust Fund. ORS 657.505. An "employer" is defined, if somewhat tautologically, as:

> "[A]ny employing unit which employs one or more individuals in an employment subject to this chapter in each of 18 separate weeks during any calendar year, or in which its total payroll during any calendar quarter amounts to $225 or more."

ORS 657.025(1). An "employee" is defined as:

> "[A]ny person * * * employed for remuneration or under any contract of hire, written or oral, express or implied, by an employer subject to this chapter * * *."

ORS 657.015. Finally, "employment" is "service for an employer * * * performed for remuneration or under any contract of hire, written or oral, express or implied." ORS 657.030(1).

The individual or entity challenging the applicability of the tax bears the burden of proving that it is not an employer within the meaning of ORS 657.025(1). *Ponderosa Inn, Inc. v. Emp. Div.*, 63 Or App 183, 186, 663 P2d 1291 (1983).

In light of the foregoing definitions, it is clear that the evidence on which the church relies simply is irrelevant. Whether the church has a governing body, pays out of the congregational tithes, or controls Barton's work is beside the point. All that matters for purposes of determining whether the church is an employer within the meaning of the statutes is whether it pays Barton for services that he renders under a contract of hire. The hearing officer concluded that it does, based on findings that it pays him approximately $1,000 per month for performing services as an evangelist. The church does not contest those findings. There is, therefore, no basis for concluding that the hearing officer erred.

The church next argues that, if the hearing officer did not err in concluding that it is an employer, he did err in concluding that it was not subject to the statutory exemption for employers of independent contractors. The church acknowledges that it did not meet each of the eight requirements for the statutory exemption. It argues that several of the factors simply do not apply to churches. In the alternative, it argues that the hearing officer's findings as to those factors are not supported by substantial evidence. The department argues that, as a matter of law, all eight requirements must be met and that, because the church could not satisfy all eight, the hearing officer did not err in concluding that the exemption did not apply. We agree with the department.

ORS 657.040(1)(a) provides, in part:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless

and until it is shown to the satisfaction of the Director of the Employment Department that:

"(a) Such individual is an independent contractor, as that term is defined in ORS 670.600 * * *."

ORS 670.600, in turn, provides that a person must satisfy the following conditions to be considered an independent contractor:

"As used in various provisions of ORS chapters 316, 448, 656, 657, 671 and 701, an individual or business entity that performs labor or services for remuneration shall be considered to perform the labor or services as an 'independent contractor' if the standards of this section are met:

"(1) The individual or business entity providing the labor or services is free from direction and control over the means and manner of providing the labor or services, subject only to the right of the person for whom the labor or services are provided to specify the desired results;

"(2) The individual or business entity providing labor or services is responsible for obtaining all assumed business registrations or professional occupation licenses required by state law or local government ordinances for the individual or business entity to conduct the business;

"(3) The individual or business entity providing labor or services furnishes the tools or equipment necessary for performance of the contracted labor or services;

"(4) The individual or business entity providing labor or services has the authority to hire and fire employees to perform the labor or services;

"(5) Payment for the labor or services is made upon completion of the performance of specific portions of the project or is made on the basis of an annual or periodic retainer;

"(6) The individual or business entity providing labor or services is licensed under ORS chapter 701, if the individual or business entity provides labor or services for which licensure is required;

"(7) Federal and state income tax returns in the name of the business or a business Schedule C or farm Schedule F as part of the personal income tax return were filed for the previous year if the individual or business entity performed

labor or services as an independent contractor in the previous year; and

"(8)   The individual or business entity represents to the public that the labor or services are to be provided by an independently established business. Except when an individual or business entity files a Schedule F as part of the personal income tax returns and the individual or business entity performs farm labor or services that are reportable on Schedule C, an individual or business entity is considered to be engaged in an independently established business when four or more of the following circumstances exist:

"(a)   The labor or services are primarily carried out at a location that is separate from the residence of an individual who performs the labor or services, or are primarily carried out in a specific portion of the residence, which portion is set aside as the location of the business;

"(b)   Commercial advertising or business cards as is customary in operating similar businesses are purchased for the business, or the individual or business entity has a trade association membership;

"(c)   Telephone listing and service are used for the business that is separate from the personal residence listing and service used by an individual who performs the labor or services;

"(d)   Labor or services are performed only pursuant to written contracts;

"(e)   Labor or services are performed for two or more different persons within a period of one year; or

"(f)   The individual or business entity assumes financial responsibility for defective workmanship or for service not provided as evidenced by the ownership of performance bonds, warranties, errors and omission insurance or liability insurance relating to the labor or services to be provided."

In this case, the hearing officer concluded that the church failed to submit evidence sufficient to demonstrate five of the eight requirements.

■      The church's first argument is that not all of the requirements apply to it. The short answer is that all of the

requirements apply, in the sense that none may be disregarded. *Canvasser Services, Inc. v. Employment Dept.*, 163 Or App 270, 276, 987 P2d 562 (1999), *rev den* 329 Or 650 (2000). Some of the requirements, however, are by their terms conditional in application. In such cases, the requirements apply only to the extent that the conditions exist. Thus, while ORS 670.600(2) requires that an independent contractor must be responsible for his or her own business registrations or professional occupational licenses, that requirement must be met only if "required by state law or local government ordinances." If there are no such laws or ordinances, then there is no such requirement. Similarly, ORS 670.600(6) requires that the independent contractor be licensed under ORS chapter 701, "if the individual or business entity provides labor or services for which licensure is required." If the law requires no such licensure, then an individual or entity need not obtain a chapter 701 license as a condition. The other requirements contain no such conditions. They apply in all cases, including this one. *Canvasser*, 163 Or App at 276. We turn, then, to the question whether the church satisfied all those conditions.

■     The hearing officer first concluded that the church failed to establish that Barton was "free of direction and control" of the church. In particular, the hearing officer noted that Barton was subject to discharge by the church for failing to carry out his duties consistently with what the church regarded as biblical doctrine. Second, the hearing officer found that the church failed to establish that Barton provided all the tools and equipment he needed to perform the duties. It did not, for example, show that Barton provided all the books and other items when teaching or leading services. Third, the hearing officer found that the church failed to establish that Barton had authority to hire his own employees. Fourth, the hearing officer found that the church failed to establish that payment was made on completion of the performance of specific work. Finally, the hearing officer found that the church failed to prove that Barton met the requirements of an independently established business.

■     According to the church, none of the foregoing findings is supported by substantial evidence. In order to prevail,

the church must establish precisely that; if any of the findings is supported by substantial evidence, then the church has failed to satisfy *all* of the statutory requirements, and the independent contractor exemption does not apply. In evaluating the hearing officer's findings, we examine the record as a whole to determine whether substantial evidence supports them. ORS 183.482(8)(c); *Canvasser*, 163 Or App at 273-74.

We begin with the first challenged finding, that the church failed to establish that it did not control Barton's work. The hearing officer found that the church at least implicitly controlled his work, because it retained the authority to fire him if he carried out his duties in a manner contrary to biblical principles. In support of its argument, the church cites the testimony of one of its members that it could not fire Barton. The witness, however, testified that there was no "official procedure" by which to fire Barton. The same witness went on to testify that, were Barton to act contrary to biblical principles, the church would have the authority to ask him to "move on." In particular, the witness testified that, were Barton to engage in "false teaching," the congregation "absolutely" would have the authority to remove him. We conclude that the hearing officer's finding is supported by substantial evidence.

Having so concluded, we need not address whether the hearing officer erred in finding that the church failed to meet the other requirements. As we have noted, it is the church's burden to satisfy all of the statutory requirements to obtain the exemption that applies to independent contractors.

The church finally argues that requiring it to acknowledge that it is an employer within the meaning of ORS 657.025(1) violates its rights of free exercise and free speech. Specifically, the church argues that requiring it to acknowledge that it is Barton's employer conflicts with its religious belief that his employer is God, not the church. As the church explains, it is concerned that both it and Barton

"hold religious beliefs which do not allow them to consider the church as Mr. Barton's employer. Yet compliance with the unemployment statute would require [the church] to affirmatively state that it is Mr. Barton's employer, thus

implying that [the church] directs and controls Mr. Barton's work as its spiritual leader."

According to the church, because the acknowledgment of its status as an employer interferes with its beliefs, to pass constitutional muster, the department must show a compelling state interest in requiring the church to do so. There being no such compelling state interest, the church argues, it should not be subject to the requirement. The department responds that all that is required is that the Oregon employment statute constitute a neutral, generally applicable law that only incidentally affects religious belief.

At the outset, we note what the church's argument is not. First, it is not a facial challenge to the constitutionality of the employment law. The church expressly waived that argument before the hearing officer and does not raise it on appeal.[1] Second, it is not a challenge based on the state constitution. Before the hearing officer, the church's constitutional argument was based exclusively on the federal constitution. Likewise, on appeal, it advances no argument under the state constitution.[2]

We turn then to the question whether requiring the church to report to the department as an "employer" violates

---

[1] The church insists that it has not really waived the argument, that it is simply choosing not to emphasize it in light of the fact that the matter already was decided against it in *Newport Church of the Nazarene v. Hensley*, 161 Or App 12, 983 P2d 1072, *rev allowed* 329 Or 447 (1999). What the church said to the hearing officer, however, was that this case "is really not a facial challenge." Instead, the church stated, "[t]his is about an as-applied challenge, as applied to these folks, their theological paradigm."

[2] The department argues that, nevertheless, we should address the state constitution. The argument is not an unreasonable one. In *Salem College & Academy, Inc. v. Emp. Div.*, 298 Or 471, 484, 695 P2d 25 (1985), the Supreme Court noted the "judicial responsibility to determine the state's own law before deciding whether the state falls short of federal constitutional standards." More recently, however, this court has taken the position that it will not consider state constitutional arguments not raised below. *See, e.g., State v. Riggs*, 143 Or App 427, 430-31, 923 P2d 683 (1996), *rev den* 325 Or 247 (1997) ("Defendant's state constitutional claim * * * was not preserved, and we focus solely on his argument under the Fifth Amendment."). The Supreme Court likewise does not always pause to consider state constitutional arguments before addressing federal constitutional arguments, particularly when the parties have not asserted any independent state constitutional analysis. *See, e.g., State v. Mendez*, 308 Or 9, 19, 774 P2d 1082 (1989) ("We decline to consider defendant's state constitutional claim because he has failed to brief or argue any independent state constitutional theory.").

the federal constitution. We begin with the church's argument that its right of free exercise of religion is being unlawfully compromised. In examining that argument, we accept at face value the church's characterization of its own doctrine. *Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 US 707, 716, 101 S Ct 1425, 67 L Ed 2d 624 (1981) ("Courts are not the arbiters of scriptural interpretation.").

The Free Exercise Clause of the First Amendment, made applicable to the states by incorporation into the Fourteenth Amendment, provides that "Congress shall make no law respecting the establishment of religion, or *prohibiting the free exercise thereof.*" (Emphasis added.) The clause prohibits governmental regulation of religious beliefs as such. *Sherbert v. Verner*, 374 US 398, 402, 83 S Ct 1790, 10 L Ed 2d 965 (1963).

It does not, however, prohibit the enactment and enforcement of laws that are neutral, generally applicable, and otherwise valid and that only incidentally affect religious belief or practice. Thus, in *Employment Division v. Smith*, 494 US 872, 110 S Ct 1595, 108 L Ed 2d 876 (1990), the United States Supreme Court held that the Free Exercise Clause permits a state to prohibit the sacramental use of controlled substances and thus to deny unemployment benefits to persons discharged for using those substances. The Court explained that "[w]e have never held that an individual's religious beliefs excuse him [or her] from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Id.* at 878-79.

Similarly, in *United States v. Lee*, 455 US 252, 259, 102 S Ct 1051, 71 L Ed 2d 127 (1982), the Court held that the constitution does not prohibit the federal government from requiring members of the Amish faith to pay social security taxes, because maintaining "an organized society that guarantees religious freedom to a great variety of faiths requires that some religious practices yield to the common good."

This case is controlled by *Smith* and *Lee*. The state's unemployment taxation law applies to all employers, regardless of the religious beliefs of the employers or their employees, and is intended to protect the economic security of the state's residents, not to inhibit or promote any particular

religious beliefs. *Employment Div. v. Rogue Valley Youth for Christ*, 307 Or 490, 499, 770 P2d 588 (1989). Any effect on the religious beliefs of the church are purely incidental. Requiring the church to report to the department as an employer, therefore, is not prohibited by the Free Exercise Clause.

The church insists that *Smith* and *Lee* are distinguishable. Citing *Sherbert*, it argues that the United States Supreme Court recognizes an exception from the more deferential analysis applied in those cases when the challenged state law already has in place a system of "individualized exemptions." In such cases, the church argues, there must be an exemption for religious institutions unless the state can muster a compelling reason not to provide one. In this case, the church observes, the employment statutes include a number of exemptions from the definition of "employment," including service performed for a school by a student, service performed for a hospital by a patient, and service performed by a student nurse, ORS 657.030; agricultural labor, ORS 657.045; the distribution of newspapers, ORS 657.080; the solicitation of contracts for home improvements, ORS 657.087; and the like. There being such a list of exemptions, the church concludes, the state must provide one for religious institutions in the absence of a compelling justification for not doing so.

The church misapprehends *Sherbert* and the nature of the "individualized exemptions" that may trigger the more demanding compelling justification from the state. In *Sherbert*, a worker was discharged because she would not work on Saturdays, the Sabbath day of her Seventh-Day Adventist faith. The applicable law provided that a worker was ineligible for unemployment benefits if she failed without good cause to accept available suitable work when offered. The state employment agency determined that the worker had failed to establish good cause for not continuing in what was otherwise available suitable work. She challenged the decision on constitutional grounds. The Court held that the denial of benefits violated the Free Exercise Clause, because the state could not establish a compelling justification for its regulation of her religious practices. *Sherbert*, 374 US at 406-09.

*Sherbert's* holding has been substantially narrowed by subsequent case law, however. In *Smith*, the Court questioned whether the case was not properly limited to its facts, that is, to the narrow circumstance of denial of unemployment compensation benefits. 494 US at 883-84. The Court went on to say that, even to the extent that *Sherbert* has any applicability beyond the denial of unemployment compensation, it would not require religious exemptions from neutral, generally applicable, otherwise valid state laws:

> "The *Sherbert* test, it must be recalled, was developed in a context that lent itself to individualized governmental assessment of the reasons for the relevant conduct. * * * [A] distinctive feature of unemployment compensation programs is that their eligibility criteria invite consideration of the particular circumstances behind an applicant's unemployment * * *."

*Smith*, 494 US at 884. The Court noted that, in particular, the good cause requirements of the eligibility statutes create a mechanism for individualized exemptions. Only in such cases, where the state has the authority to create ad hoc, individualized exemptions on the basis of the facts of an individual case, is the state required to extend an exemption for "religious hardship" in the absence of a compelling reason not to do so. *Id.*

Relevant Oregon statutes provide no such authority to create individualized exemptions. Instead, they define neutral, generally applicable categories of work that are or are not considered subject to its requirements. All apply regardless of the religious beliefs of the workers or the entities for whom they provide services. None includes an exemption for "good cause" that would permit the department to create ad hoc exemptions from the requirements of the law.

There remains the church's argument that requiring it to report to the department as an employer violates not merely its right of free exercise, but also its right of free expression. The church reads *Smith* to hold that, even when the state enforces a neutral law of general applicability, strict scrutiny may be required when the law implicates both free exercise and free speech guarantees of the First Amendment. Relying on *Wooley v. Maynard*, 430 US 705, 97 S Ct 1428, 51

L Ed 2d 752 (1977), the church argues that requiring it to report to the department as an employer is essentially compelling it unconstitutionally to engage in speech that violates its religious beliefs.

In *Smith*, the Court observed of its own prior cases:

> "The only decisions in which we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action have involved not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech[.] * * * The present case does not present such a hybrid situation, but a free exercise claim unconnected with any communicative activity * * *."

494 US at 881-82.

Precisely what the Court's *dictum* signifies is difficult to divine. Strictly speaking, the Court did not say that, in any particular class of cases, a neutral, generally applicable law will be subject to strict scrutiny. It simply noted—without reference to any particular standard—that, in the past, the Court had struck down neutral, generally applicable laws when a case "involved" both the Free Exercise Clause and some other constitutional protection. The church nevertheless insists that the upshot of *Smith* is that neutral, generally applicable laws will be subject to strict scrutiny in cases in which a free exercise claim is conjoined with a free speech claim. The department responds that the church's argument fails, because it cannot prevail on a free speech claim. The church replies that, to trigger the strict scrutiny standard, it need present only a "colorable" free expression claim.

Why the addition of another constitutional claim would affect the standard of review of a free exercise claim is not immediately obvious. Indeed, if the mere allegation of an additional constitutional claim has the effect of altering the standard articulated in *Smith,* then the "hybrid" exception likely would swallow the *Smith* rule; free exercise claims will frequently also pose at least a colorable free speech claim. On

the other hand, if the Court meant that strict scrutiny pertains only when an additional constitutional claim is successfully asserted, then the rule of *Smith* becomes mere surplusage, as the church already would win under the alternate constitutional theory.

The Supreme Court has not had the occasion to explain that aspect of its *Smith* decision. The lower federal courts have little to offer, either. The Court of Appeals for the Sixth Circuit, for example, has concluded that the so-called "hybrid exception" portion of *Smith* was *dictum* and has declined to give any significance to it. *Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton, Ohio*, 240 F 3d 553, 561-62 (6th Cir 2001) ("That language was dicta [*sic*] and therefore not binding."). The Ninth Circuit, in contrast, reads *Smith* to create a "hybrid rights" claim to which the strict scrutiny standard applies when a free exercise claim is coupled with "a 'colorable claim' that a companion right has been violated—that is, a 'fair probability' or a 'likelihood,' but not a certitude, of success on the merits." *Miller v. Reed*, 176 F3d 1202, 1207 (9th Cir 1999). The Tenth Circuit has adopted a similar approach. *Swanson v. Guthrie Independent School District No. 1-L*, 135 F3d 694, 700 (10th Cir 1998). The First Circuit, meanwhile, has taken the position that hybrid rights claims stand or fall depending on whether they can be factually distinguished from the cases to which the Court referred in *Smith. Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F3d 525, 539 (1st Cir 1995), *cert den* 516 US 1159 (1996).

We need not attempt to solve the problem in this case, because, even assuming that the Ninth Circuit's approach—the approach most favorable to the church—were the correct one, the church's hybrid rights claim still would fail, because it is unable to demonstrate that it has a fair probability of prevailing on a free expression claim.

In asserting what it regards as a colorable free expression claim, the church relies solely on *Wooley*. In that case, the Supreme Court held that the State of New Hampshire could not require automobile drivers to display a license plate slogan that offended the drivers' religious beliefs. The Court explained its holding as follows:

"[W]e are faced with a state measure which forces an individual, as part of his daily life—indeed, constantly while his automobile is in public view—to be an instrument for fostering adherence to an ideological point of view he finds unacceptable. In doing so, the State 'invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control.'

"* * * The First Amendment protects the right of individuals to hold a point of view different from the majority, and to refuse to foster, in the way New Hampshire commands, an idea they find morally objectionable."

430 US at 715. The Court emphasized that its ruling focused on compelled "dissemination of an ideological message * * * for the express purpose that it be observed and read by the public." *Id.* at 713. The Court distinguished the required use of state forms that contain messages to which a person may object:

"Some States require that certain documents bear the seal of the State or some other official stamp for the purposes of recordation. Such seal might contain, albeit obscurely, a symbol or motto having political or philosophical implications. The purpose of such a seal, however, is not to advertise the message it bears, but simply to authenticate the document by showing the authority of its origin."

*Id.* at 715 n 11. Similarly, the Court distinguished requiring the use of coinage and currency that contains a national motto that some may find objectionable:

"[C]urrency, which is passed from hand to hand, differs in significant respects from an automobile, which is readily associated with its operator. Currency is generally carried in a purse or pocket, and need not be displayed to the public. The bearer of the currency is thus not required to publicly advertise the national motto."

*Id.* at 717 n 15.

In this case, the church objects to the filing of a form with the department that it contends implicitly contains a message that it finds offensive, namely that it is Barton's employer. The forms are not disseminated to the public. In fact, they are protected from public distribution. ORS

657.665(1)(a) (information secured pursuant to ORS chapter 657 is to be held confidential). The forms are not required for the express purpose of disseminating any message to the public. Nor do they publicly identify the church with any particular ideological message. In short, the mere filing of a confidential report with the department in no way implicates any of the First Amendment concerns at issue in *Wooley*. To the contrary, the filings to which the church objects are precisely the sort of forms that the Court already has said do not violate constitutional guarantees of free expression. We therefore conclude that the church has failed to assert a colorable free expression claim. As a result, its hybrid rights claim cannot succeed, even assuming the application of the standard most favorable to it.

In sum, the hearing officer correctly concluded that the church is an employer within the meaning of ORS 657.025(1), that Barton is not an independent contractor, and that requiring it to file regular reports with the department does not violate its constitutional rights of free exercise and free expression.

Affirmed.