Argued and submitted March 19, affirmed June 12, 2002

# FREEDOM SOCIALIST PARTY,
Jordana Sardo, and Marjorie Elizabeth Sandoz,
*Respondents,*

*v.*

# Bill BRADBURY,
in his official capacity as
Oregon Secretary of State,
*Appellant.*

## 0003-02456; A113583

48 P3d 199

Mary H. Williams, Assistant Solicitor General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Steven Goldberg argued the cause for respondents. With him on the brief was Goldberg, Mechanic, Stuart & Gibson, LLP.

Monica A. Smith, Bill Goodman, and Smith, Gamson, Diamond & Olney, filed the brief *amicus curiae* for Center for Constitutional Rights et al.

Before Haselton, Presiding Judge, and Landau and Wollheim, Judges.

WOLLHEIM, J.

Landau, J., concurring.

## WOLLHEIM, J.

Defendant Secretary of State of Oregon appeals from a judgment entered in favor of plaintiffs in this declaratory judgment action declaring ORS 248.010 to be unconstitutional. For the reasons set forth below, we affirm.

Plaintiffs include the Freedom Socialist Party,[1] an Oregon registered voter who would vote for Freedom Socialist Party candidates in Oregon elections if possible, and an Oregon resident who would run for public office as a Freedom Socialist Party candidate were she permitted by law to do so. At issue in this case is the constitutionality of ORS 248.010, which provides that "[e]ach major political party and minor political party, its nominated candidates and its members and officers shall have the exclusive right to use the whole party name or any part of it."

The Freedom Socialist Party, which has been in existence for some 30 years and has run candidates for office in several other states, wishes to establish itself as a minor political party in Oregon and to run candidates for office. It sent a letter to defendant and a prospective petition to establish itself as a political party in House District 16 to that effect and received a letter in response from defendant refusing approval of the petition on the ground that the filing could not be accepted under the name "Freedom Socialist Party" because ORS 248.010 prohibited the use of the word "socialist" in the name of any new political party because another political party was using the word "socialist" in its name.

Plaintiffs initiated this action for declaratory and injunctive relief, seeking to have ORS 248.010 declared invalid and seeking a permanent injunction against defendant's enforcement of that statute. The gravamen of plaintiffs' complaint was that the statute violated numerous provisions of the Oregon Constitution, as well as the First

---

[1] The Freedom Socialist Party describes itself as "dedicated to the building of a genuine workers' democracy based on socialism that will guarantee full economic, social, political and legal equality to women, people of color, sexual minorities, and all who are exploited, oppressed, and repelled by the profit system and its offshoot, imperialism."

Amendment to the United States Constitution, as applied to the state through the Fourteenth Amendment to the United States Constitution. The parties filed cross-motions for summary judgment on the federal constitutional issue. In support of their motion for summary judgment, plaintiffs filed an affidavit from the chair of the Socialist Party of Oregon, stating that, although the parties had distinct political ideologies, the Socialist Party of Oregon had no objection to Freedom Socialist Party candidates appearing on the same ballot as its candidates and had no concerns that voters would be confused about the differences between the two parties. Plaintiffs also presented an affidavit from a political science professor and author of several books about election politics who opined that the use of the word "socialist" in a party's name may be a central component of its identity, that voters who describe themselves as socialist are not likely to be confused when several parties use the term socialist as a component of their names, and that, if a candidate is not designated on a ballot according to the name by which his or her party is generally known, voters who might otherwise vote for the candidate are deprived of a critical voting cue.

The trial court granted plaintiffs' motion for summary judgment and denied defendant's motion. The court concluded that the statute could be interpreted "as prohibiting the use of a part of the name of an existing political party as part of the name of a new political party where the use would cause significant voter confusion," and further concluded that the statute, if interpreted in that manner, was facially valid but that it nonetheless was unconstitutional as applied to plaintiffs.

On appeal, defendant asserts that the trial court erred in concluding that ORS 248.010 is unconstitutional. Plaintiffs respond that the trial court correctly concluded that the statute violated the First Amendment, although they posit that the trial court erroneously determined that the statute could be given a construction that would render it constitutional under some circumstances. Defendant agrees with plaintiffs that the "narrowing construction" of the statute suggested by the trial court is not feasible but asserts that the statute, as written, is constitutional.

■     The only issue presented on appeal is whether ORS 248.010 violates the First Amendment to the United States Constitution.[2] The First Amendment provides that "Congress shall make no law * * * abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The First Amendment was made applicable to the states through the Fourteenth Amendment. *See, e.g., City of Ladue v. Gilleo*, 512 US 43, 45 n 1, 114 S Ct 2038, 129 L Ed 2d 36 (1994). The First Amendment "protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas." *Timmons v. Twin Cities Area New Party*, 520 US 351, 357, 117 S Ct 1364, 137 L Ed 2d 589 (1997). It also protects the rights of voters to cast votes effectively. *Anderson v. Celebrezze*, 460 US 780, 103 S Ct 1564, 75 L Ed 2d 547 (1983). Cases such as this one, where a state restricts a political party's participation in the election process by preventing it from using its name on the ballot, implicate both of those First Amendment protections.

■■     Those First Amendment rights, however, are exercised in the context of public elections, and it is undisputed that states "may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons*, 520 US at 358 (citations omitted). States, thus, may enact reasonable time, place, and manner-type restrictions concerning elections. *Tashjian v. Republican Party of Connecticut*, 479 US 208, 217, 107 S Ct 544, 93 L Ed 2d 514 (1986). In weighing First

---

[2] Defendant makes a number of arguments on appeal concerning whether ORS 248.010 violates Article I, section 8, of the Oregon Constitution. Because that question was not before the court on summary judgment, and because plaintiffs do not assert that Article I, section 8, provides an alternative basis for affirming the trial court's judgment, we do not address whether the statute violates Article I, section 8.

In response to the concurrence, we note that defendant has not argued to this court or to the trial court that plaintiffs were required to establish that they had no recourse under the state constitution before asserting a claim under the federal constitution. The concurrence acknowledges that recent case law from the Oregon Supreme Court appears *not* to require such a prerequisite. Given that the parties have not briefed and argued the questions, and that the case law on this subject is uncertain, at best, we choose not to impose such a requirement in the present case.

Amendment associational rights against states' interests, the Court has, as is its custom, developed a balancing test:

"When deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary. Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger a less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable non-discriminatory restrictions." *Timmons*, 520 US at 358 (internal quotation marks and citations omitted).

Defendant's argument on appeal is three-fold. First, defendant asserts that ORS 248.010 does not implicate the First Amendment rights of plaintiffs or anyone else. Defendant argues that ORS 248.010 limits only labels that the state uses on voter registration lists, voters' pamphlets, and ballots and that such lists, pamphlets, and ballots are not "public fora" and the state thus may reasonably regulate their content. Second, defendant argues that, assuming that First Amendment rights are implicated, ORS 248.010 imposes at most a minimal burden on such rights and thus the state's important regulatory interest justifies that burden. Finally, defendant argues that, even if the burden imposed by ORS 248.010 on plaintiffs' First Amendment rights is considered "severe," the state's interest of minimizing voter confusion is compelling enough to justify such a burden.

As discussed below, we reject each of defendant's arguments. First, we reject defendant's attempt to characterize this case as a First Amendment free speech case, to be analyzed based on whether the ballot box is a "public forum." First Amendment association and voting rights claims such as this one are not analyzed under a public forum/free speech rubric but are analyzed under the framework summarized in the *Timmons* case. That framework for analysis was not unique to *Timmons* (which concerned whether a political party had a constitutional right to list as its candidate on the

ballot the same candidate nominated by a different party) but has been applied by the Court in numerous cases concerning First Amendment associational rights of political parties. *See, e.g., California Democratic Party v. Jones,* 530 US 567, 120 S Ct 2402, 147 L Ed 2d 502 (2000) (blanket primary system imposed a severe burden on associational rights of political parties, was not justified by a compelling state interest, and in any event was not a narrowly tailored means of furthering the state's interest); *Burdick v. Takushi,* 504 US 428, 112 S Ct 2059, 119 L Ed 2d 245 (1992) (state law that failed to provide for write-in candidacy in primary elections imposed a limited burden on First Amendment rights but was justified by legitimate state interest in avoiding the possibility of "unrestrained factionalism").

■    The analytic framework described above also was used by the Court in *Norman v. Reed,* 502 US 279, 112 S Ct 698, 116 L Ed 2d 711 (1992), which concerned First Amendment associational rights. The Court's analysis in *Norman* clearly demonstrates that defendant is incorrect in the present case in its assertion that ORS 248.010 places no burden on First Amendment associational rights. In *Norman,* the Court held unconstitutional a state statute that had been interpreted by a state court to preclude the Harold Washington Party from running candidates in elections in certain geographical areas because a Harold Washington Party had run a candidate in an earlier election in a different, although geographically overlapping, area.[3] *Id.* at 290. The Court concluded that such a prohibition was "far broader than necessary to serve the state's asserted interests" in preventing misrepresentation and electoral confusion. *Id.* The Court stated:

> "To prevent misrepresentation and electoral confusion, Illinois may, of course, prohibit candidates running for office in one subdivision from adopting the name of a party

---

[3] The Illinois statute in question provided that new political parties "shall not bear the same name as, nor include the name of any established political party[.]" *Norman,* 501 US at 284, *quoting* Ill Rev Stat, ch 46, § 10-5. It was unclear on the record in that case whether the two Harold Washington Parties were unrelated entities. It was undisputed, however, that the "new" Harold Washington Party was authorized by the candidate who previously had run as the Harold Washington Party candidate to use the name. *Id.* at 285.

established in another if they are not in any way affiliated with the party. The State's interest is particularly strong where, as here, the party and its self-described candidates coexist in the same geographical area. But Illinois could avoid these ills merely by requiring the candidates to get formal permission to use the name from the established party they seek to represent, a simple expedient for fostering an informed electorate without suppressing the growth of small parties." *Id.*

Thus, not only is the analytic framework for the type of question at issue here well-established by case law from the Court, but the Court has applied that framework in circumstances factually similar to the present case. Based on *Norman,* we conclude that defendant is incorrect both in its premise that the proper analytic framework concerns whether the ballot is a "public forum" and in its conclusion that plaintiffs' First Amendment associational rights are not implicated by ORS 248.010.

The next step of the process is to "weigh the character and magnitude of the burden the State's rule imposes on [plaintiffs'] rights against the interests the State contends justify the burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons,* 520 US at 358. The burden, we conclude, is severe. The Freedom Socialist Party has a national presence, albeit perhaps not a large one, demonstrated by its publication of numerous materials and its fielding of candidates in elections in other states. It has operated under this name for more than 30 years. As noted by plaintiffs' expert, the party designation of a candidate on the ballot provides voters with a "critical voting cue." Such a voting cue would seem to be particularly critical where the word in question is one such as "socialist," which is not merely a slogan but actually reflects a specific political ideology. We conclude that a state law that prevents a political party from running candidates under the name by which it is generally recognized places a severe burden on the associational and voting rights of members of that party.[4]

---

[4] Although the Court in *Norman* did not explicitly state whether it considered "severe" the burden imposed by the law at issue in that case, which prevented a new party from using the same name as a name that had previously been used, it is implicit in the Court's conclusion that the law "sweeps broader than necessary to advance electoral order," 502 US at 290, that the Court was using the test for when a burden is "severe." *See Timmons,* 520 US at 358 (regulations imposing severe

We next turn to the nature of the state's interest and whether, if that interest is compelling, ORS 248.010 is sufficiently narrowly tailored to justify the severe burden it places on plaintiffs' constitutional rights. Defendant has identified only one state interest that is promoted by ORS 248.010: to avoid electoral confusion when voters face a choice among political parties with similar names.[5] The Court has acknowledged that preventing electoral confusion is, in fact, a legitimate state interest in circumstances such as these:

> "To prevent misrepresentation and electoral confusion, Illinois may, of course, prohibit candidates running for office in one subdivision from adopting the name of a party established in another if they are not in any way affiliated with the party. The State's interest is particularly strong where, as here, the party and its self-described candidates coexist in the same geographical area. *But Illinois could avoid these ills merely by requiring the candidates to get formal permission to the use name from the established party they seek to represent, a simple expedient for fostering an informed electorate without suppressing the growth of small parties.*" *Norman,* 502 US at 290 (emphasis added).

We acknowledge that the state does have a legitimate interest in preventing voter confusion. The extent to which that interest is furthered by the strictures of ORS 248.010, however, is not obvious. *See, e.g., Rosen v. Brown,* 970 F2d 169, 177 (6th Cir 1992) (in ruling on state law that prevented candidate from using "independent" designation on ballot, the court noted that the state's "claim that it is enhancing the ability of its citizenry to make wise decisions by restricting the flow of information to them must be viewed with some skepticism"). It is, in fact, arguable that a statute that prevents some, but not all, socialist candidates for political office

---

burdens on plaintiffs' rights must be narrowly tailored). *See also Riddell v. The National Democratic Party,* 508 F2d 770 (5th Cir 1975) (analyzing statute similar to ORS 248.010 and concluding that prohibition on two parties using the word "democratic" in their names was a "substantial burden" on associational and voting rights that must be justified by a compelling state interest).

[5] Interestingly enough, defendant has not argued in this case that laws such as ORS 248.010 that can be barriers to new political parties serve a legitimate state purpose of promoting the two-party system and preventing factionalism among established political parties, although it is clear that, historically, such laws often have advanced that interest. *See generally Timmons,* 520 US at 366-67 (recognizing that states may have an interest in enacting election regulations that favor the traditional two-party system, and further recognizing that that interest is a legitimate one, albeit not one that justifies unreasonably exclusionary restrictions).

from designating themselves as socialists simply because they do not belong to the first socialist party to be recognized in a state contributes to, rather than alleviates, voter confusion.

Logic dictates that the risk of electoral confusion must be greater where multiple parties coexist with the *same* name, as was the case in *Norman*, than under circumstances such as these, where the parties' names in question are similar only insofar as they both contain the word "socialist." Certainly, if a law that promotes the legitimate state interest of preventing voter confusion is overly broad when it provides an absolute ban the use of the *same* party name, one that has an absolute ban on the use of any part of a party name that is the same as a part of another party's name is likewise overbroad. As noted by the Court in *Norman*, the state's interest in preventing voter confusion might be addressed by requiring the party with the same (or similar) name to get formal permission to use the name from the other party involved, which occurred not only in *Norman* but in the present case as well.[6] Even a law that made such a requirement, however, might not be sufficiently narrowly tailored if it prohibited *any* similar words in the names of political parties, as does ORS 248.010. *Cf. Riddell v. National Democratic Party*, 508 F2d 770, 777-78 (5th Cir 1975) (law prohibiting more than one party from using the word "democratic" in its name was not sufficiently narrowly tailored and could, in fact, increase voter confusion, given that both parties in that case had valid claims to be described as the "democratic" party).

In sum, defendant's position is untenable. Each of defendant's three arguments described above is undermined by, if not flatly contradictory to, the decision of the Court in *Norman*.[7] In short, as shown by *Norman*, First Amendment associational and voting rights are implicated when a state statute prohibits a new political party from running candidates under the party's name because another party has used that name (or a part of it). The burden placed on those First

---

[6] We note, as well, that the Socialist Party of Oregon has participated in this case as *amicus curiae* in support of plaintiffs' position. Other *amici* representing political parties and organizations too numerous to list here also have appeared in support of plaintiffs.

[7] Surprisingly, defendant has not even cited *Norman*, much less attempted to distinguish it from the present case.

Amendment rights is severe, because voters are deprived of an important voting cue when candidates are unable to run for office using their party affiliation. While the state has an interest in preventing voter confusion that may justify at least *some* restriction on parties' choice of names, a restriction that prohibits a new party from using "any part" of the name used by another political party sweeps too broadly, and may, in fact, cause more voter confusion than it alleviates. The trial court correctly concluded that ORS 248.010 is unconstitutional.

We address, briefly, the trial court's suggestion that ORS 248.010 could be given a "narrowing construction" that renders it constitutional. It is true that a court, when faced with an ambiguous statute, may employ a maxim of statutory construction that would cause the court to choose a constitutional construction of the statute over an unconstitutional one. *See State v. Kitzman*, 323 Or 589, 602, 920 P2d 124 (1996) ("when one plausible construction of a statute is constitutional and another plausible construction of a statute is unconstitutional, courts will assume that the legislature intended the constitutional meaning"). That maxim has no application here, though, because ORS 248.010 is unambiguous—it prohibits "the use of the whole party name or any part of it," with no limitations or qualifications. The trial court, in suggesting that the statute could be interpreted as prohibiting the use of a party name or part of a name only where the use would cause significant voter confusion, ran afoul of the maxim of statutory construction that courts are not to "insert what has been omitted" into a statute. ORS 174.010. There is no plausible narrowing construction to be given to ORS 248.010 that would render it constitutional. Plaintiffs are correct that the statute is facially unconstitutional.

Affirmed.

**LANDAU, J.,** concurring.

I agree with the majority that ORS 248.010 is facially unconstitutional. I write separately because the majority arrives at that conclusion on the basis of federal constitutional law without first addressing whether the challenged statute violates Article I, section 8, of the Oregon Constitution. That the majority does so is not surprising. There is

recent case law that clearly stands for the proposition that matters of state law need not be addressed if not preserved. In my view, we should take this opportunity to reexamine that case law and reaffirm a fundamental principle of state constitutionalism, that, *in all cases*, before examining a question of federal constitutional law, we first must determine whether there is a violation of the state constitution. If there is a violation of state constitutional law, there is no need to address issues of federal constitutional law; indeed, there is no legal basis for addressing issues of federal constitutional law. That is precisely the situation presented by this case: ORS 248.010 violates Article I, section 8, of the state constitution. Therefore, the appropriate resolution of this case is to reach that conclusion and refrain from venturing into matters of federal constitutional jurisprudence.

I begin with the issue of whether we should address the constitutionality of the statute under Article I, section 8. That requires taking a few proverbial steps back to remember the basic premises of state and federal constitutional analysis.

That the state constitution has significance independent of its federal counterpart, of course, goes without saying in this, a vanguard jurisdiction in the "state constitutional revolution." *See, e.g.*, David Schuman, *Advocacy of State Constitutional Law Cases: A Report from the Provinces*, 2 Emerging Issues in St Const L 275, 275 (1989) ("a report from Oregon is not from some provincial and primitive venue, but—with respect to state constitutional law—from the capital of the future itself"). The question is precisely *when* it is appropriate to give the state constitution such independent significance. Oregon decided rather early on that it *always* is appropriate to consider whether there is a violation of the state constitution before addressing whether there is a violation of the federal constitution. *See, e.g.*, Wallace P. Carson, Jr., *"Last Things Last": A Methodological Approach to Legal Argument in State Courts*, 19 Will L Rev 641, 643 (1983) ("The Oregon rule is first things first.").

The principal justification for the first-things-first approach is this: Most of the relevant provisions of the federal

constitution do not even apply to the states except by incorporation through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Unless an individual has been denied a remedy under the state constitution, he or she has not yet been denied due process, and the federal constitution does not apply. Said another way, if the individual may obtain a remedy under state law, there has been no denial of due process and thus no occasion for the federal constitution even to come into play. As the Oregon Supreme Court explained in *Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981):

> "The proper sequence is to analyze the state's law, including its constitutional law, before reaching a federal constitutional claim. This is required, not for the sake either of parochialism or of style, but because the state does not deny any right claimed under the federal Constitution when the claim before the court in fact is fully met by state law."

*See also State v. Scharf*, 288 Or 451, 454, 605 P2d 690 (1980) ("Before addressing such federal issues, however, a court's responsibility is first to decide the effect of the state's own laws, because if the state provides what defendant claims, it does not deprive her of the due process commanded by the 14th amendment.").

Even in cases in which the parties neglected—or consciously declined—to address first the state constitution, the Oregon courts took the position that they are obligated to address it. Thus, in *State v. Clark*, 291 Or 231, 630 P2d 810, *cert den sub nom Clark v. Oregon*, 454 US 1084 (1981), the defendant challenged a statute solely on federal equal protection grounds. The defendant not only failed to cite Article I, section 20, of the Oregon Constitution, but also expressly disclaimed any reliance on the state constitution. The Supreme Court nevertheless concluded that it was obligated to determine whether the challenged statute violated Article I, section 20. According to the court, the defendant "could not have excluded issues of state law by pitching his attack on 14th amendment grounds." *Id.* at 233 n 1.

Similarly, in *State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983), the defendant mounted a double jeopardy challenge to his criminal conviction, citing both state and federal

double jeopardy clauses. The state argued that the court should decline to consider the state constitutional analysis because the defendant had failed to articulate any separate analysis under the state double jeopardy clause. The court disagreed, commenting that, "an Oregon court should not readily let parties, simply by their choice of issues, force the court into a position to decide that the state's government has fallen below a nationwide constitutional standard," when the matter could be decided by application of state law. *Id.* at 266-67.

Since the early 1980s, however, the courts have not been so faithful to the first-things-first doctrine. In a surprising number of cases, they—we—have ignored state constitutional analysis in favor of direct and immediate resort to federal constitutional law.

For example, Oregon courts often have held that, if the parties to the appeal have not clearly articulated a separate analysis under the state and federal constitutions, it is appropriate simply to apply the federal analysis. *See, e.g., GTE Northwest, Inc. v. Public Utility Commission,* 321 Or 458, 468 n 6, 900 P2d 495 (1995), *cert den sub nom Oregon PUC v. GTE Northwest,* 517 US 1155 (1996) ("GTE offers no separate analysis under the state constitution. Accordingly, we assume, without deciding, that the analysis is the same under Article I, section 18, of the Oregon Constitution, and the Takings Clause of the Fifth Amendment to the Constitution of the United States."); *Stevens v. City of Cannon Beach,* 317 Or 131, 135 n 5, 854 P2d 449 (1993), *cert den* 510 US 1207 (1994) ("Because plaintiffs have not made a separate argument under the state constitution, we will assume for purposes of this case, without deciding, that the analysis would be the same under the Oregon Constitution.").

In a similar vein, the courts have held that state constitutional arguments will not be addressed on appeal unless they were raised to the trial court. Indeed, we have held that, even if a party cited the state constitution to the trial court, we will not address it on appeal unless that party "clearly present[ed]" a distinct method of state constitutional analysis. *State v. Riggs,* 143 Or App 427, 430-31, 923 P2d 683 (1996), *rev den* 325 Or 247 (1997); *see also State v. Mendez,*

308 Or 9, 19, 774 P2d 1082 (1989) ("We decline to consider defendant's state constitutional claim because he has failed to brief or argue any independent state constitutional theory."); *Church at 295 S. 18th St. v. Employment Dept.*, 175 Or App 114, 123 n 2, 28 P3d 1185, *rev den* 333 Or 73 (2001) (addressing only federal constitutional arguments because state constitutional arguments were not preserved).

In other words, parties may, either by neglect or by design, force the courts to issue what amount to advisory opinions on federal constitutional law. That is precisely what the Supreme Court said in *Cupp, Scharf, Clark*, and *Kennedy* that parties cannot do. Have those cases implicitly been overruled? Apparently not. Both we and the Supreme Court continue to cite them for the proposition that we *must* decide state constitutional issues before we may reach federal issues. *See, e.g., State v. Joslin*, 332 Or 373, 380, 29 P3d 1112 (2001), *rev allowed* 334 Or 190 ) (2002) (citing *Kennedy* for rule that Supreme Court "decides state constitutional issues before deciding federal issues"); *State v. Vasquez*, 177 Or App 477, 481, 34 P3d 1188 (2001) (citing *Kennedy* for the rule that the courts "will reach federal constitutional arguments only if questions of state law are not dispositive").

This state of affairs cannot help but be confusing to both bench and bar. We should reassess our conflicting case law and return to basics: Regardless of what the parties argue, we cannot reach federal constitutional issues until we have determined that the state constitution is not dispositive. If we are concerned about proceeding in the absence of briefing by the parties, we can remedy that through supplemental briefing. But in no event should we ignore our obligation under basic principles of state constitutionalism to decide first things first.

With that in mind, I turn to whether ORS 248.010 violates Article I, section 8, of the Oregon Constitution. That statute provides that "[e]ach major political party and minor political party, its nominated candidates and its members and officers shall have the exclusive right to use the whole party name or any part of it." Under that statute, defendant has determined that the Freedom Socialist Party may not use that name in various state-printed documents because

another party already has laid claim to one of the words "socialist."

Article I, section 8, provides that

> "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Under *State v. Robertson*, 293 Or 402, 412, 649 P2d 569 (1982), and its progeny, a law that restrains speech based on the content of that speech is unconstitutional unless the restraint is wholly contained within a historical exception.

In this case, it strikes me that the statute runs headlong into the free expression guarantee of Article I, section 8. A political party name communicates a message to voters. Its name, in fact, is a shorthand expression for a core value that the party wishes to communicate to the public. It certainly is speech, and a regulation that prohibits a party from using certain words to express that message certainly is a regulation based on the content of speech. The parties have identified no historical exception that wholly contains such a restraint, and I am aware of none. It necessarily follows that the restraint is unconstitutional.

The defendant offers several arguments in avoidance of Article I, section 8, none of which I find persuasive. First, relying on *Higgins v. DMV*, 170 Or App 542, 13 P3d 531 (2000), *rev allowed* 332 Or 250 (2001), defendant argues that, much like the state-issued license plates at issue in that case, the state publications at issue in this case—specifically, voter registration cards, ballots, and voters' pamphlets—are "state speech" and thus are not even subject to the protections of Article I, section 8. In relying on *Higgins*, however, defendant relies on a lead opinion that commanded only three votes, not an opinion of this court. In no other decision that defendant cites or of which I am aware has it been determined that Article I, section 8, may be avoided merely because a communication is, in some sense, "state speech."

Aside from that, defendant never defines what he means by "state speech." He merely observes that voter registration cards, ballots, and voters' pamphlets are printed by

the state and serve a state purpose and then concludes that what is printed on those documents is "state speech." It is not clear to me why the mere fact that the state performs the printing for a state purpose means that a document is the speech of the state itself. The state, for example, prints and distributes voters' pamphlets for a state purpose. That hardly makes everything that is contained in them—such as the statements for and against ballot measures that members of the public purchase—"state speech" in any reasonable sense of the word.

It seems to me that, if there is such a thing as "state speech" that is not subject to Article I, section 8, it is speech that the state either endorses or may be perceived as endorsing. Thus, in *Higgins*, a license plate arguably is "state speech" because the public reasonably might perceive that the state endorses what appears on it. No such danger exists in this case, when the very nature of the publications involved make it clear that the state is not endorsing anything.

In the alternative, the secretary argues that, if the statute concerns speech, then it does so permissibly, because the true target of the regulation is an unwanted effect—possible voter confusion—not the content of the speech itself. As we explained in *Leppanen v. Lane Transit District*, 181 Or App 136, 144, 45 P3d 501 (2002), however,

> "for a regulation properly to be classified [as one permissibly targeting only effects], its operative provisions must limit the regulation to the effects it is intended to target; it must not regulate a form of speech merely because that form of speech may, in some instances, produce the unwanted effects."

*See also City of Portland v. Tidyman*, 306 Or 174, 185, 759 P2d 242 (1988) ("the operative text of the ordinance [must] specify adverse effects" that are to be regulated). In this case, defendant can suggest that, at best, it is merely possible that someone might be confused by permitting more than one party to use the word "socialist." That is not enough to transform the statute into one that regulates only effects and not speech.

Defendant finally suggests that, if nothing else, the statute is constitutional because it is subject to the so-called "incompatibility exception" to Article I, section 8. According to defendant, permitting more than one party to use the word "socialist" is incompatible with his duty "to present electors with information that minimizes confusion."

In *In re Lasswell*, 296 Or 121, 125, 673 P2d 855 (1983), the Supreme Court upheld a disciplinary rule that prohibited a district attorney from publicly discussing the subject of an ongoing prosecution. Similarly, in *In re Fadeley*, 310 Or 548, 564, 802 P2d 31 (1990), the court upheld a provision of the judicial code that prohibits direct fundraising by a candidate for judicial office. In both cases, the court relied, in part, on the notion that sometimes it must be permissible to regulate the speech *of a public official*, because the prohibited speech is incompatible with that official's public function. In this case, ORS 248.010 imposes no constraints on the secretary's freedom to speak. *Lasswell* and *Fadeley* simply do not apply.

In short, the statute prohibits a political party from using specified words in communicating a message to members of the voting public. That is a regulation of political speech. It plainly is protected by Article I, section 8. I would conclude on that basis, and that basis alone, that ORS 248.010 is unconstitutional. Once it has been determined that the statute violates the state constitution, there is no deprivation of due process and, hence, no occasion to address whether the statute also violates the First Amendment. I therefore respectfully concur with the majority's conclusion, but not with its reasoning.