Argued and submitted April 30, reversed and remanded with instructions
October 31, 2001

## STATE OF OREGON,
*Respondent,*

*v.*

## DANIEL OROZCO VASQUEZ,
aka David V. Orozco,
*Appellant.*

CF97-0282; A105506

34 P3d 1188

James N. Varner, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, State Public Defender.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

HASELTON, P. J.

---

* Deits, C. J., *vice* Ceniceros, S. J.

## HASELTON, P. J.

Defendant appeals from a judgment of conviction for one count of murder, ORS 163.115, and assigns error to the trial court's denial of his motion to dismiss on speedy trial grounds. In particular, defendant argues that, pursuant to the speedy trial protections of Article I, section 10, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution, he was entitled to dismissal, with prejudice, of the indictment against him. We conclude that defendant's entitlement to a speedy trial attached with the filing of the complainant's information in September 1987, and that the delay of roughly 11 years between that information and defendant's October 1998 motion to dismiss requires dismissal of the indictment against defendant. Accordingly, we reverse.

The relevant facts are as follows: On September 11, 1987, Isidro Servin Torres was killed outside the Rest-A-Bit motel in Umatilla. Following the shooting, the Umatilla Police began an investigation. That investigation revealed that defendant had been present at the time of the killing, yelled "yahoo" as he ran away from the crime scene, and was suspected in another homicide that had occurred on September 9, 1987, in Yakima, Washington, two days before the Umatilla incident. Consequently, on September 21, 1987, Umatilla Police Officer Tolliver filed two documents with the Umatilla County district court.

The first document, styled as an "information," named defendant and stated:

"The above-named defendant is accused by this information of the crime of Murder committed as follows: The defendant, on or about September 11, 1987, in Umatilla County, State of Oregon[,] did unlawfully and intentionally cause the death of another human being, to-wit: Isidro Servin Torres, by shooting him with a pistol, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

That document also bore Tolliver's notarized signature, a stamp and signature from the Umatilla County trial court

administrator indicating that the document was filed on September 21, 1987, and a signature of Umatilla County Deputy District Attorney David D. Gallaher.

The second document, entitled "Affidavit in Support of Arrest Warrant," consisted of Tolliver's signed and notarized assertion that there was probable cause to arrest defendant for murder. Tolliver's affidavit, which was supported by his crime investigation report, also bore a filing stamp and signature from the Umatilla County trial court administrator. In response to those representations by Tolliver, a warrant for defendant's arrest was issued on September 21, 1987.

Defendant was never arrested on that warrant. Rather, following the murder, defendant traveled to California, where he was arrested on a separate murder charge in that state.[1] As early as September 1988, the Umatilla County District Attorney's Office was aware of defendant's incarceration in California. Despite that knowledge, the state made no effort to proceed against defendant.

At some point in the early 1990s, much of the evidence relevant to the case was destroyed in a fire at the Umatilla Police Department. In particular, of the 24 items of evidence seized by the state during its initial investigation, only six remained at trial. The evidence that was destroyed included several blood samples, bullets, an ammunition cartridge, a box spring mattress from the Rest-A-Bit motel, and items of clothing belonging to the victim. The only evidence that remained at trial was two rounds of ammunition seized from a vehicle connected with the murder, some photographs of the crime scene and from the victim's autopsy, and several statements made by two witnesses regarding the murder.

It was not until May 1997, well after the evidence was destroyed, that the state sought and obtained a Umatilla

---

[1] Apparently, defendant was convicted in 1989 of murder with a firearm in California and was sentenced to life in prison with the possibility of parole after 27 years. In addition, in March 1996 defendant pleaded guilty in Washington to first-degree murder for the Yakima homicide. Based on that plea, the Washington courts sentenced defendant to a prison term in Washington of 22 years and seven months. Thus, at a minimum—and notwithstanding our disposition—the earliest that defendant might be released from prison is in the year 2038.

County grand jury indictment charging defendant with murder for Torres's death. The September 1987 information was subsequently dismissed on June 2, 1997, and on January 26, 1998, the Umatilla County Circuit Court issued a warrant for defendant's arrest. Based on that warrant, and pursuant to a detainer lodged against defendant in California, in July 1998 defendant was returned to Oregon for trial.[2] Before his trial, which began on December 1, 1998, defendant moved to dismiss the indictment with prejudice on the ground that his constitutional right to a speedy trial had been violated. The trial court denied that motion, and on December 9, 1998, the jury convicted defendant of murder.

On appeal, defendant assigns error to the trial court's denial of his motion to dismiss, arguing principally that the speedy trial protections afforded by Article I, section 10, and the Sixth Amendment were triggered by the September 1987 information and arrest warrant, and that those constitutional provisions, given the more than 11-year lapse of time, require dismissal. Defendant also argues that that delay violated ORS 135.747, which requires that a defendant charged with a crime be brought to trial "within a reasonable period of time." We begin by addressing defendant's constitutional claims. *See State v. Harberts*, 331 Or 72, 81, 11 P3d 641 (2000) (it is appropriate to deviate from usual practice of addressing statutory claims first where constitutional claims could result in more complete relief of dismissal with prejudice).

Defendant's constitutional argument hinges on the premise that his constitutional entitlement to a speedy trial attached in September 1987. We start by assessing that premise under the Oregon Constitution. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (court will reach federal constitutional arguments only if questions of state law are not dispositive).

■    Pursuant to Article I, section 10, of the Oregon Constitution:

---

[2] *See* ORS 135.775 *et seq.*

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

Section 10, and particularly its "without delay" language, has long been held to afford Oregon litigants, both civil and criminal,[3] with an absolute protection against the delayed administration of justice. *See State v. Breaw*, 45 Or 586, 587, 78 P 896 (1904) ("Section 10 of article I of the state constitution declares that justice shall be administered without delay, which is substantially the same as guarantying to a defendant in a criminal action a speedy trial.").

■ ■ The question of what triggers section 10's speedy trial protections in criminal proceedings was first addressed in substance in *State v. Vawter*, 236 Or 85, 386 P2d 915 (1963). There, the court considered the effect of a delay of seven-and-one-half months between the filing of an "information of felony" against the defendant and his motion to dismiss the allegations against him. In rejecting the defendant's speedy trial argument, the court sought to identify the point in a criminal proceeding at which section 10's speedy trial protections attach:

"We think * * * that the requirement of Article I, section 10 of the Constitution that 'justice shall be administered * * * without delay' means that there shall be no unreasonable delay *after a formal complaint has been filed against the defendant.* This is the construction placed upon the Sixth Amendment by the United States Court of Appeals for the Ninth Circuit, *Iva Ikuko Toguri D'Aquino v. United States,* 192 F2d 338, 350 (9th Cir, 1951) and by the Supreme Court of California upon the guarantee of a speedy trial in the constitution of that state, *People v. Jordan*, 45 Cal 2d 697, 290 P2d 484 [(1955)]; *People v. Godlewski*[, 22 Cal 2d 677, 140 P2d 381 (1943)]. While Article I, section 10, of the Constitution of this state does not contain the word 'accused,' as do the comparable provisions in the Constitutions of the United States and of California, still, we think that the

---

[3] *See State v. Lee*, 110 Or 682, 684, 224 P 627 (1924) ("The right guaranteed by our fundamental law for a 'speedy' hearing applies alike to civil and criminal causes.").

same construction should be given to the constitution of this state. No different measure of protection of the rights of persons accused of crime can reasonably be said to have been in the minds of the framers of our constitution." *Vawter*, 236 Or at 90-91 (emphasis added; footnotes omitted).

Thus, *Vawter* identifies the filing of a "formal complaint" as the event triggering constitutional speedy trial protections. Oregon courts have since consistently endorsed and applied that principle. *See Harberts*, 331 Or at 83 (citing *Vawter*'s "formal complaint" standard with approval); *see also State v. Boots*, 94 Or App 713, 715, 767 P2d 450, *rev'd on other grounds* 308 Or 371 (1989) (indicating that Article I, section 10, "is directed only to unreasonable delay after a charge has been formally made" and that precharge delay is necessarily addressed under a due process analysis). *Accord State v. Serrell*, 265 Or 216, 219, 507 P2d 1405 (1973) ("[T]he time elapsing prior to an arrest or formal charge is not taken into consideration in determining whether a defendant has been given a speedy trial.").[4] Before the filing of a "formal complaint," the speedy trial protections afforded by Article I, section 10, are inapplicable.[5] However, once such a complaint has been filed in a criminal proceeding, an accused has an absolute entitlement to a speedy trial.

---

[4] The United States Supreme Court has held that, under the Sixth Amendment, actual arrest also triggers constitutional speedy trial protections. *United States v. Marion*, 404 US 307, 320, 92 S Ct 455, 30 L Ed 2d 468 (1971) (right to speedy trial under Sixth Amendment is not applicable absent "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer"). It is unclear whether actual arrest has the same effect for Oregon constitutional purposes. *Accord Serrell*, 265 Or at 219. Here, however, because the timing of defendant's actual arrest is irrelevant to our analysis, we need not decide if, in fact, the speedy trial protections of Article I, section 10, are triggered upon arrest.

[5] That is not to say that criminal defendants have no constitutionally based mechanism by which to address pre-"formal complaint" delay. Rather, the Due Process Clause of the Fifth Amendment to the United States Constitution has been interpreted to afford a speedy trial remedy to criminal defendants who are actually prejudiced by such delay. *See, e.g., State v. Dike*, 91 Or App 542, 544-55, 756 P2d 657, *rev den* 306 Or 660 (1988) (discussing due process analysis); *see also United States v. Lovasco*, 431 US 783, 789-90, 97 S Ct 2044, 52 L Ed 2d 752 (1977) (suggesting that proof of actual prejudice is the *sine qua non* of a due process violation based on preaccusation delay). Here, however, defendant made no argument regarding precharging delay.

■ ■ Defendant's argument under Article I, section 10, thus hinges on whether the September 1987 information constitutes a "formal complaint" sufficient to trigger that provision's speedy trial protections. As *Vawter* itself makes clear, Article I, section 10, applies after the filing of a criminal information. 236 Or at 92 (calculating delay from the filing of an "information of felony"); *see also State v. Downing*, 4 Or App 269, 478 P2d 420 (1970) (same). ORS 131.005 establishes the various types of criminal accusatory instruments in Oregon. ORS 131.005(1) defines "accusatory instrument" as "a grand jury indictment, an information or a complaint." An "information" that charges a felony must be one of two types: "a district attorney's information or a complainant's information." ORS 131.005(10). A "district attorney's information" is a "written accusation by a district attorney." ORS 131.005(9). A "complainant's information" is a

"written accusation, verified by the oath of a person and bearing an indorsement of acceptance by the district attorney having jurisdiction thereof, filed with a magistrate, and charging another person with the commission of an offense punishable as a felony. A complainant's information serves to commence an action, but not as a basis for prosecution thereof." ORS 131.005(4).

Thus, ORS 131.005 describes the universe of things that can constitute accusatory instruments and limits "informations" to two precisely defined formal instruments.

■ The information here is not a district attorney's information because it was executed by Tolliver, a Umatilla police officer, and not by a district attorney. Rather, it is a complainant's information. In particular, all of the elements for a complainant's information are satisfied: Tolliver signed the document; his signature was made under oath; and the document bears an "indorsement of acceptance by the district attorney." ORS 131.005(4). Consequently, that document constitutes a legally effective accusatory instrument sufficient to trigger the speedy trial protections of Article I, section 10.

■ ■ The issue thus reduces to whether the delay here, which began with the issuance of the complainant's information against defendant in 1987, violates Article I, section 10.

In *Harberts*, the court, in its review of state and federal speedy trial case law, highlighted the tenets underlying its earlier Article I, section 10, jurisprudence:

"This court has held that delay in and of itself may be sufficient to establish a speedy-trial violation if the delay is so long 'that the thought of ordering [a] defendant to trial "shocks the imagination and the conscience," ' *Vawter*, 236 Or at 96 (quoting *United States v. Chase*, 135 F Supp 230, 233 (ND Ill 1955)), or if the delay is caused purposely to hamper the defense, [*State v.*] *Ivory*, 278 Or [499, 506, 564 P2d 1039 (1977)]. Short of those circumstances, however, this court considers the other factors. If a defendant has been imprisoned for a long period awaiting trial, or if the government has caused the delay in bad faith, then prejudice is 'obvious.' *Ivory*, 278 Or at 508 (quoting *Dickey v. Florida*, 398 US 30, 53, 90 S Ct 1564, 26 L Ed 2d 26 (1970)). If a witness dies or disappears during the delay, the prejudice also is 'obvious.' *Id.* at 508 (quoting *Barker* [*v. Wingo*, 407 US 514, 532, 92 S Ct 2182, 33 L Ed 2d 101 (1972)]). In cases in which inquiry into impairment of the defense is required, a defendant needs to show only that the delay caused a 'reasonable possibility of prejudice' to the ability to prepare a defense. *Id.* at 508." 331 Or at 86 (footnotes omitted).

The court then went on to summarize the state constitutional speedy trial analysis:

"Article I, section 10, imposes on the state a mandatory directive to bring a defendant to trial 'without delay.' Determining whether the state did so is a fact-specific inquiry that requires the court to examine the circumstances of each particular case. Under our present-day jurisprudence, speedy-trial claims are guided by considering the length of the delay and, if it is not manifestly excessive or purposefully caused by the government to hamper the defense, the reasons for the delay, and prejudice to the defendant." *Id.* at 88.

Thus, the court in *Harberts* established the following analytical framework for analyzing speedy trial claims under Article I, section 10: First, the court must consider the length and cause of the delay. If the delay, under the circumstances, is so long that it is "manifestly excessive" so as to "shock the imagination and the conscience," then the court must dismiss

the charges against the defendant without further inquiry. *Harberts*, 331 Or at 88. Similarly, if the delay was purposefully caused by the state to hamper the defense, further inquiry is again unnecessary.[6] *Id.* Barring either of those extreme circumstances, however, it is essential that the court assess all of the relevant considerations—length of delay, reasons for delay, and prejudice to the defendant—to determine if the circumstances warrant dismissal under Article I, section 10. *Id.* at 83 (citing *State of Oregon v. Kuhnhausen,* 201 Or 478, 536, 266 P2d 698, *on reh'g* 272 P2d 225 (1954)). We thus proceed with that analysis here.

■  As described earlier, the delay here—from September 1987 to October 1998—was more than 11 years. The sheer length of that delay is not *per se* so "manifestly excessive" as to compel dismissal without consideration of the other factors. That is so because, as we understand it, in any given case the determination of whether delay has been fatally "manifestly excessive" requires consideration of at least three variables: the nature of the crime charged, the length of the delay, and the period, if any, of the defendant's pretrial incarceration as a result of the pendency of the charges. *See Barker v. Wingo,* 407 US 514, 530-31, 92 S Ct 2182, 33 L Ed 2d 101 (1972) ("[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."); *Harberts,* 331 Or at 88 (prolonged pretrial incarceration on the pending or related charges "shortens the constitutionally permissible measure of delay").

Two cases, in particular, inform our analysis. In *Harberts*, the court determined that, where the defendant was charged with murder and the total period of pretrial delay and pretrial incarceration was nearly five years, the delay was not so "manifestly excessive" as to compel dismissal without any consideration of the reasons for delay or the actual potential for prejudice to the defendant. 331 Or at

---

[6] There is no suggestion here that the state purposefully caused the delay to hamper defendant's defense.

88-89. In *State v. Rohlfing*, 155 Or App 127, 963 P2d 87 (1998), the defendant had been charged with burglary in the first degree, the length of delay was eight years, and the defendant had not been incarcerated pretrial. In those circumstances, we did not deem the delay to be "manifestly excessive" but, instead, proceeded to consider the reasons for delay and potential prejudice to the defendant. *Id.* at 132-35.

Here, in contrast, while the length of delay was longer than in either *Harberts* or *Rohlfing*, there was no meaningful pretrial incarceration,[7] and the nature of the crime charged—murder—was materially more serious than the crime charged in *Rohlfing*. In the totality of those circumstances, the delay here, while censurable, was not so manifestly excessive that the thought of bringing defendant to trial " 'shocks the conscience and the imagination.' " *Vawter*, 236 Or at 96 (quoting *United States v. Chase*, 135 F Supp 230, 233 (ND Ill 1955), in which the court found that a 20-year delay violated the speedy trial provision of the Sixth Amendment to the United States Constitution). Accordingly, because the delay here is insufficient, by itself, to require dismissal, we turn to the remaining factors relevant to our analysis—the reasons for the delay, and the prejudice to the defendant. *Harberts*, 331 Or at 88.

Turning to the reasons for the delay, the state argues that defendant was responsible for at least part of the delay. In particular, the state points out that defendant traveled to California shortly after the murder and resisted being brought to Oregon for trial in June 1998. However, the undisputed facts demonstrate that little, if any, of the 11-year delay here was attributable to defendant. It is undisputed that the state knew that defendant was incarcerated in California as early as 1988. It is also undisputed that the state did not seek defendant's transfer to Oregon via a detainer lodged with California authorities until late June 1998. In response to that detainer, defendant apparently sought, and obtained, a hearing in California to contest the legality of the transfer. Defendant's objections, however, were quickly resolved, and defendant was transferred to

---

[7] As noted, defendant was held briefly after being transferred from California pursuant to detainer.

Oregon and lodged in the Umatilla County Jail by July 18, 1998, less than a month after Oregon formally requested defendant's transfer from California. Thus, at most, the portion of the delay that is attributable to defendant is insignificant relative to the entire 11-year pretrial delay.

■■ The state further suggests that the delay was justified because of weaknesses in the state's case against defendant:

> "The state's theory, which had significant proof problems until after defendant pleaded guilty to the Yakima murder, was that defendant murdered Torres because he was a witness to the [Yakima murder]. Nothing even hints at bad faith in the delay between the filing of the information and the trial."

That "weakness of case" rationalization is unavailing. If there were problems of proof so significant that the state was unprepared to try the case, it was incumbent upon the state to dismiss the information against defendant, and reindict him when it was prepared to try him. As counsel for defendant argued before the trial court:

> "[The state's argument that there were problems with the case until defendant pleaded guilty to the Yakima murder] would be, probably, a very good argument under these facts if there had been no charges filed, if there had been no arrest warrant issued, and if there had been no indictment until 1997, with no information prior to that time.
>
> "That would be a wonderful argument under the Fourteenth Amendment due process claim of denial of a speedy arraignment or excessive pre-indictment delay, is what the state is arguing. Those are good arguments for that but, we've not raised that. When the State filed the information, got the arrest warrant, the State established that there was probable cause to bring this matter to trial.
>
> "That was out there the entire time so, the State can't now argue that we didn't have a case. If they didn't have a case, they shouldn't have filed it, because, if they didn't have a case and they filed it, then that would be improper * * *. If they thought they didn't have a case, they should have dismissed. They clearly thought they had a case."

It may be that, in some instances, considerations of "case-building" could justify a short period of pretrial delay.[8] But such considerations can never justify a delay of this magnitude. Rather, when faced with a lengthy delay because of gaps in its proof, the state must either proceed to trial notwithstanding those problems or dismiss the pending charges. The state's failure to take either of those measures here, far from justifying the delay, instead demonstrates that the delay was unjustified.

■ The state offers no other justification for the delay. Rather, as counsel for the state acknowledged at oral argument, this case is one that, somehow, "fell through the cracks." The state's failure to offer some meaningful justification for the 11-year delay weighs heavily in favor of dismissal. *State v. Mende*, 304 Or 18, 24, 741 P2d 496 (1987) ("the longer the state unjustifiably delays a trial, the more heavily the 'reasons for delay' factor weighs in favor of the defendant").

■ We consider, finally, whether defendant was prejudiced by the delay. Oregon courts have identified three types of prejudice for purposes of the Article I, section 10, speedy trial analysis: "the damage arising from lengthy pretrial incarceration, the anxiety and public suspicion resulting from public accusation of a crime, and the hampering of the ability to defend at trial." *Harberts*, 331 Or at 93 (citing *Ivory*, 278 Or at 507-08). Defendant here does not rely on the first two of those types of prejudice but, instead, points to the third type and argues that his defense was hampered by the delay:

> "[I]t is * * * clear that defendant demonstrated before the trial court that he suffered prejudice from the delay. Specifically, all but six of 24 items seized in the investigation of this case [were] destroyed following a fire at the Umatilla Police Department * * *."

We agree.

---

[8] *See, e.g.,* ORS 135.185 (a criminal defendant can be held to answer upon a showing of probable cause); ORS 135.745 (in instances where a defendant is held to answer based upon a showing of probable cause, the state has a 30-day window in which to either obtain an indictment or file a district attorney's information in circuit court against a defendant).

As the court emphasized in *Harberts*, it is not incumbent upon a criminal defendant to show that he or she was actually prejudiced by a delay. Rather,

"[i]n cases in which inquiry into impairment of the defense is required, *a defendant need only show that the delay caused a 'reasonable possibility of prejudice' to the ability to prepare a defense.*" 331 Or at 86 (quoting *Ivory*, 278 Or at 508) (emphasis added).

Defendant has satisfied that burden. In particular, there is no dispute that most items of evidence seized by the Umatilla Police were destroyed in a fire some time in the early 1990s. When asked about the effect of that destruction of the evidence on defendant's defense, Officer Tolliver, who executed the original complainant's information, acknowledged that there was some possibility that the destroyed evidence was, in fact, exculpatory. In addition, defendant offered the testimony of a private investigator/former police officer, who testified that the destruction of the evidence compromised defendant's ability to independently analyze all of the evidence relevant to the case.

That testimony demonstrates that defendant suffered a reasonable possibility of prejudice as a consequence of the delay. We emphasize, particularly, that a defendant's ability to prove prejudice typically diminishes as the period of delay lengthens. *See Doggett v. United States*, 505 US 647, 655-56, 112 S Ct 2686, 120 L Ed 2d 520 (1992) (stating principle). Thus, as the length of the delay becomes more extreme, a defendant's ability to show prejudice is similarly impaired. *See Harberts*, 331 Or at 96 n 10 (citing *Doggett*, 505 US at 651-52, and *Mende*, 304 Or at 23-24, for the proposition that "the length of delay is the 'triggering mechanism' for inquiry into the other factors in the speedy-trial analysis and that the length of delay 'obviously' may be a factor in assessing the prejudice factor"). Accordingly, we conclude that, under the circumstances, and particularly given the length of the delay present here, defendant has demonstrated a "reasonable possibility" of prejudice that weighs in favor of dismissal. *See id.* at 97 ("It is sufficient that defendant was deprived of the opportunity to demonstrate potential weaknesses in the state's case. When the state has the burden to

prove its case beyond a reasonable doubt, a defendant need do no more.").

We conclude, thus, that "the state failed to bring defendant to trial 'without delay' under Article I, section 10, of the Oregon Constitution." *Harberts*, 331 Or at 99. All of the various considerations—length of delay, reasons for delay, and potential prejudice to the defendant—militate in defendant's favor, and the state offers no persuasive arguments to the contrary. *See Rohlfing*, 155 Or App at 135 (requiring dismissal under Article I, section 10, where, *inter alia*, there was an eight-year delay between the defendant's indictment and his arrest, and the cause of the delay was "the state's indifference or negligence" in failing to bring the defendant to trial). Accordingly, we are compelled to dismiss the charges against defendant with prejudice. *Harberts*, 331 Or at 99.

Because we resolve defendant's speedy trial claim under Article I, section 10, we do not reach his argument under the Sixth Amendment to the United States Constitution.

Reversed and remanded with instructions to dismiss the indictment with prejudice.