Argued and submitted May 6, 2003, decision of the Court of Appeals reversed;
judgment of the circuit court affirmed April 15, 2004

STATE OF OREGON,
*Petitioner on Review,*

*v.*

DANIEL OROZCO VASQUEZ,
aka David V. Orozco,
*Respondent on Review.*

(DC CF970282; CA A105506; SC S49148)

88 P3d 271

David John Amesbury, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

James N. Varner, Oregon Appellate Consortium, Newberg, argued the cause for respondent on review.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

GILLETTE, J.

---

** Kistler, J., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

In this criminal case, the issue is whether an 11-year delay between the filing of a "complainant's information" against defendant for murder and defendant's trial on that offense violated defendant's right to a trial "without delay" under Article I, section 10, of the Oregon Constitution or to a "speedy trial" under the Sixth Amendment to the United States Constitution. The trial court denied defendant's motion to dismiss the case on those grounds. On defendant's appeal, the Court of Appeals disagreed. That court concluded that the delay was unjustified and prejudicial to defendant and, therefore, violated his constitutional rights. *State v. Vasquez*, 177 Or App 477, 487-90, 34 P3d 1188 (2001). Accordingly, the Court of Appeals held that the trial court should have dismissed the indictment against defendant. *Id.* at 491. We allowed review and, for the reasons that follow, now reverse the decision of the Court of Appeals.

The relevant facts are not in dispute. On September 11, 1987, someone shot and killed a man named Torres outside the Rest-A-Bit motel in Umatilla, Oregon. Police investigators soon suspected that defendant was responsible for that homicide. Defendant also was the chief suspect in the murder of a man named Mendoza, which had occurred two days earlier in Yakima, Washington.

About two weeks after Torres's murder, the investigating police officer filed two documents with the Umatilla County District Court: (1) a "complainant's information" accusing defendant of the crime of murder and (2) an affidavit in support of an arrest warrant. The "complainant's information" recited that defendant was "accused by this information of the crime of Murder" and went on to summarize details of the killing of Torres. The information bore the officer's notarized signature, the stamp and signature of the trial court administrator indicating the filing date, and the signature of the Umatilla County District Attorney. The accompanying affidavit contained the officer's sworn statement that there was probable cause to arrest defendant for murder, supported by the officer's crime investigation report, which was attached. Based on that affidavit, the district court issued a warrant for defendant's arrest.

Defendant never was arrested on that warrant, however. By the time that the Oregon arrest warrant issued, defendant had fled to California, where he eventually was arrested for a murder that he allegedly committed there. By September 1988, the Umatilla County District Attorney's Office had been notified that defendant was incarcerated in California, but the District Attorney made no effort to proceed against him. Defendant was tried and convicted of murder in California in 1989 and sentenced to life in prison with the possibility of parole after 27 years.

In the early 1990s, a fire at the Umatilla Police Department destroyed much of the evidence that the police kept there respecting the Torres homicide. Among the items burned in the fire were blood samples, bullets, a cartridge, a box-spring mattress from the Rest-A-Bit motel, and articles of Torres's clothing. Other evidence in the case was not destroyed, however, including two rounds of ammunition seized from a vehicle connected with the murder, photographs of the crime scene and from Torres's autopsy, and several statements made by two witnesses regarding the murder.

Meanwhile, Washington police detectives had continued to investigate the Yakima murder. They eventually charged defendant with murdering Mendoza, and, in January 1997, defendant pleaded guilty to first-degree murder for that crime. The Washington court sentenced defendant to a term of imprisonment of 22 years and seven months, to be served consecutively to the California sentence.[1]

Oregon authorities also took action to prosecute defendant in 1997. At that time, the Umatilla County District Attorney's office obtained an indictment in the Umatilla County Circuit Court against defendant for the Torres murder and dismissed the earlier information.[2]

---

[1] Defendant will be eligible for parole in California in 2016; accordingly, that is the earliest date at which defendant may begin serving the sentence in Washington. Thus, irrespective of our decision in this case, defendant will remain in prison until approximately 2038.

[2] The factual record is somewhat vague as to the reason for the delay in indicting defendant in Oregon. However, the state informed the trial court during a

Defendant moved to dismiss the indictment on statutory and constitutional speedy trial grounds. In his brief to the trial court, defendant asserted in passing that the 11-year delay from the filing of the complainant's information to the ultimate trial in the case violated ORS 135.747, which provides:

> "If a defendant *charged with a crime*, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial *within a reasonable period of time*, the court shall order the accusatory instrument to be dismissed."

(Emphasis added.) However, because any dismissal under ORS 135.747 would be without prejudice to a subsequent prosecution, defendant confined his arguments in the trial court to his contention that the delay violated his state and federal constitutional rights. That argument, if accepted, would result in dismissal of the murder charge with prejudice.[3] In support of his position, defendant argued that (1) the district attorney's office had made no effort to pursue the prosecution in the 11 years between the commission of the crime and the indictment against defendant, despite the fact that it had known of defendant's whereabouts since at least September 1988; and (2) defendant was prejudiced by the delay because of the fire at the police station, which

pretrial evidentiary hearing that prosecutors had not become convinced that they could prove that defendant murdered Torres until after defendant pleaded guilty to Mendoza's murder in Washington. Up to that point, the state's case was based on the testimony of defendant's cousin, Orozco. Orozco had told police shortly after Torres's murder that he thought that defendant suspected that Torres either had had or wanted to have sex with defendant's wife. Orozco, however, was a convicted (and, at that time, incarcerated) felon whom the state felt would not be convincing to a jury. The Umatilla County District Attorney believed that defendant's 1997 guilty plea in the Washington case helped to establish defendant's actual motive in killing Torres: Torres had been present at Mendoza's murder and, immediately thereafter, defendant had blamed Torres for that crime, knowing, as the Umatilla County District Attorney put it, that Torres was "not going to be in a position to deny that, because [defendant] murdered him two days after murdering * * * Mendoza."

[3] In its response in the trial court, the state correctly pointed out that defendant's statutory argument is unavailing in any event, in light of the fact that the state dismissed the information after a grand jury indicted defendant. Under that circumstance, defendant effectively received the statutory remedy of dismissal without prejudice.

destroyed a large part of the evidence. The trial court rejected those arguments.

The case went to trial and, in December 1998, a jury convicted defendant of murder. As noted, on defendant's appeal, the Court of Appeals reversed defendant's conviction and remanded the case with instructions to dismiss the indictment with prejudice.

■ In its opinion, the Court of Appeals first observed, correctly, that defendant never has contended that the time between the *indictment* against him and the trial in this case was excessive or violated his constitutional rights in any way; instead, his argument is premised on the notion that the event triggering his right to trial without delay was the 1987 filing of the complainant's *information* against him in Umatilla County. *Vasquez*, 177 Or App at 481. Accordingly, the Court of Appeals began by analyzing that premise under the Oregon Constitution.[4] *Id.* The court ultimately concluded that the filing of the information was sufficient to start the clock on defendant's right, under Article I, section 10, to trial without delay. *Id.* at 484. Having so concluded, the court examined whether the circumstances surrounding the delay were such that defendant had established a violation of his constitutional rights. *Id.* at 485-91. The court answered that question in the affirmative and concluded that defendant was entitled to have the indictment dismissed. *Id.* at 491.

■ As did the Court of Appeals, we begin our analysis with Article I, section 10, of the Oregon Constitution. That section provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course

---

[4] The Court of Appeals correctly observed that it was proper to deviate from the usual practice and address defendant's constitutional arguments before considering his statutory arguments because analysis of the constitutional claims could result in more complete relief (dismissal with prejudice). *Vasquez*, 177 Or App at 481. *See State v. Harberts*, 331 Or 72, 81, 11 P3d 641 (2000) (illustrating point). In accordance with our usual practice, the court addressed the state constitutional claims first. *Vasquez*, 177 Or App at 481. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (Oregon courts turn to federal constitutional arguments only if state law is not dispositive).

of law for injury done him in his person, property, or reputation."

We interpret that original provision of the Oregon Constitution according to the methodology that this court set out in *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992). That is, we consider the provision under three criteria: "[i]ts specific wording, the case law surrounding it, and the historical circumstances that led to its creation." *Id.* When we consider the wording of the provision at issue, we examine it in its context. *Id.* at 416.

■　　　The part of Article I, section 10, that is pertinent to our analysis is the phrase "justice shall be administered * * * without delay." The right to a trial "without delay" can arise in two different circumstances: (1) when a defendant has been arrested on a charge and is being held in jail pending trial on the charge; or (2) when a defendant, although not incarcerated on that charge, faces trial for it. This is not a case of the first kind—defendant never was arrested on this murder charge. This is, instead, a case of the second kind, *viz.*, one in which a defendant faces trial on a murder charge. The case thus narrows to this inquiry: Which event—the filing of the complainant's information or the filing of the indictment—triggered defendant's right to a trial without delay?

　　　The text of Article I, section 10, does not identify precisely the kind of event that will trigger the protections afforded by that section, but we think that it does provide an important clue: The mandate, "without delay," describes the manner in which "justice shall be administered." At around the time of the constitutional convention at which the Oregon Constitution was adopted, "justice" had a meaning similar to that of today: it generally referred to "giving to everyone what is his due." II Noah Webster, *An American Dictionary of the English Language* (1928), reprinted by Johnson Reprint Corp. (1970). At the same time, "administer" meant to "direct the execution or application of laws" or, with particular reference to judicial activity, to "app[ly laws] to particular cases or persons." *Id.* Thus, the phrase "justice shall be administered" contemplated the management or direction of a proceeding in which a person was to be given his due, that is, a

proceeding in which rewards or punishments would be meted out.[5]

In the criminal context, of course, punishments are meted out after successful prosecution. By its plain terms, Article I, section 10, directs us to determine when an official action commencing a prosecution occurs and, then, to measure the time within which the state has administered justice to determine whether it has administered justice "without delay."

We turn from examining the constitutional text to our case law, which is another aspect of the *Priest* methodology. Unfortunately, our case law is less than illuminating respecting the precise question now before us—what event triggers the "without delay" protections of Article I, section 10? That doubtless is due in part to the fact that this court's earlier decisions did not employ the *Priest* approach and, therefore, used terms whose origins and meaning to the court that used them are not self-evident today. It also is due to the court's undertaking analytical tasks not brought to it by the parties. The leading example in both these regards is *State v. Vawter*, 236 Or 85, 386 P2d 915 (1963), which is the principal case on which both defendant and the Court of Appeals relied.

Vawter was convicted of converting entrusted property under *former* ORS 165.030 (1963), *repealed by* Or Laws 1971, ch 743, § 432. He appealed, asserting that he had been denied a speedy trial. The procedural record disclosed that Vawter had been arrested on July 12, 1962, on the conversion charge. An "information of felony" was filed against him in Portland Municipal Court on July 16, 1962. Based on that information of felony, Vawter was brought before a municipal judge on July 17, waived examination, was held to answer, and was committed to the Multnomah County Jail. Seventeen days later, on August 3, 1962, he was returned to the Oregon State Penitentiary as a parole violator. The grand jury did not indict him until September 11, 1962, and no proceedings followed the indictment until Vawter was arraigned

---

[5] The constitutional instruction that "justice shall be administered * * * without delay" further suggests that those court proceedings, once commenced, shall not be prolonged or deferred.

on the indictment on February 26, 1963. Shortly thereafter, Vawter moved to dismiss the indictment on the ground that he had been denied a speedy trial. The motion was denied. *Vawter*, 236 Or at 86-87. Vawter appealed to this court.

We set out the foregoing summary because it provides a context for examining the peculiarities of the *Vawter* decision. The first peculiarity is the fact that Vawter's argument to this court on his appeal was statutory, not constitutional. Indeed, he did not even cite Article I, section 10, in his briefing to this court, much less rely on it as a source of law justifying reversal of the trial court order. Neither did he focus on the time that had elapsed between his arrest and his trial, the time frame that this court later used in its speedy trial analysis.[6]

The court made short work of Vawter's statutory claims. *See Vawter*, 236 Or 88-90 (discussing topic). Having done so, the court then unaccountably went on to a constitutional discussion. The court began by stating the following, on which defendant here understandably relies:

> "We think * * * that the requirement of Article I, section 10 of the Constitution that 'justice shall be administered * * * without delay' means that there shall be no unreasonable delay *after a formal complaint has been filed* against the defendant."

*Vawter*, 236 Or at 90-91 (emphasis added). Having introduced the topic, the court then proceeded to deal with the case as one involving a seven-month, 17-day delay, commencing with the date on which the information of felony was filed and concluding on the day that Vawter moved to dismiss the indictment. The court summarized its analytical task this way:

> "This case * * * comes down finally to the question whether this court should declare that a delay of about seven and one-half months in bringing an accused to trial in

---

[6] The defendant in *Vawter* hardly could have done otherwise. His own abstract of record reflected that his motion to dismiss the indictment had been based solely on the delay between the date of the indictment and the date on which he was arraigned. Appellant's Brief and Abstract of Record, p 2 (1703 Oregon Briefs). Thus, he had not preserved any alleged error respecting any other or longer period of time.

an ordinary criminal case in Multnomah County—there being no circumstances shown other than that the accused was during this time a prisoner in the penitentiary serving a sentence for another offense—is *per se* a violation of the constitutional right of the defendant to a speedy trial."

*Id.* at 92.

Having posed the foregoing (unpreserved and uninvited) question, however, the court then declined to answer it. Instead, the court went on to rule that, in any event, the decision whether to dismiss the indictment on speedy trial grounds was a question properly addressed to the discretion of the trial judge and that the court could not, on the record before it, say that the trial court had abused that discretion. *Id.* at 92-97.

Our extensive recitation of the *Vawter* opinion demonstrates why we find it of little use. The court purported to answer an issue that was neither raised nor preserved, gave the answer at the outset of its discussion without citation to any authority that would elucidate the meaning of the constitutional text, used a term ("formal complaint") that had no constitutional or statutory source, and then, ultimately, based its decision on another ground.

The court considered a related issue 10 years later in *State v. Serrell*, 265 Or 216, 507 P2d 1405 (1973). In that case, the defendant was tried soon after he was indicted, so he made no speedy trial challenge to the time between indictment and trial. Instead, he complained about a 141-day delay between the criminal act that he committed (illegal sale of narcotics) and the date of the indictment. The Court of Appeals had addressed that argument on the merits, apparently believing that such time was relevant to a speedy trial calculation. *See State v. Serrell*, 11 Or App 324, 327, 501 P2d 1324 (1972) (so holding). This court wished to correct that misimpression. It stated:

"It is thus apparent that the Court of Appeals believes that the time between the state's knowledge of a violation of the law by a defendant and its charging him with that violation may be taken into consideration in determining whether he has been given a speedy trial. The Court of Appeals is in error in this respect. * * *.

"\* \* \* \* \*

"In *State v. Vawter*, 236 Or 85, 90-91, 386 P2d 915 (1963), this court said:

" "\* \* \* We think, however, that the requirement of Article I, section 10, of the Constitution that "justice shall be administered \* \* \* without delay" means that there shall be no unreasonable delay after a formal complaint has been filed against the defendant. \* \* \* While Article I, section 10, of the Constitution of this state does not contain the word "accused," as do the comparable provisions in the Constitution of the United States \* \* \* still, we think that the same construction should be given to the constitution of this state. No different measure of protection of the rights of persons accused of crime can reasonably be said to have been in the minds of the framers of our constitution.' "

*Serrell*, 265 Or at 218-19 (other citations omitted).

The court in *Serrell* then offered the following summary of the relevant law:

"From the foregoing, it is plain that the time elapsing prior to an arrest *or a formal charge* is not taken into consideration in determining whether a defendant has been given a speedy trial. Since defendant made no complaint concerning the lapse of time between his indictment and trial, there is no question of his case involving a speedy trial [issue]."

*Id.* at 219 (emphasis added).

Again, as in *Vawter*, the court used a term (this time, "a formal charge") that does not appear in either the Oregon Constitution or in contemporary statutes. And again, as in *Vawter*, we are left uninformed as to precisely what it was that the court meant by the term. In sum, we are forced to conclude that our case law, such as it is, does not inform our inquiry on the issue before us.

There is another source of contextual information, however, that is of help. That context is the criminal procedure code that was in force in Oregon at the time that the Oregon Constitution was drafted. We turn to that source.

Before statehood, a territorial statute pertaining to crimes and criminal proceedings provided, in part:

"No person shall be held to answer for a criminal offence, unless on the presentment or indictment of a grand jury; except in cases * * * cognizable by justices of the peace [and in certain other instances not comparable to the one before this court]."

An Act to Define Crimes and Misdemeanors, and Regulate Criminal Proceedings, ch II, § 1 (1853), in *The Statutes of Oregon Enacted and Continued in Force by the Legislative Assembly* (1855), p 207. A warrant could be obtained for the arrest of a person accused of such criminal offenses without an indictment, but the case itself could be tried only after an indictment was found. *Id.* at ch XVII, § 2. Given this contemporaneous context for the creation of Article I, section 10, it appears to us most likely that the authors of the Oregon Constitution would have viewed the requirement that "justice shall be administered * * * without delay" as referring to the period of time after an accused had been indicted.[7] Put differently, we think that the only kind of charging instrument that by itself triggers a "without delay" analysis under Article I, section 10, is a document that, as was true of an indictment at the commencement of Oregon statehood, is sufficient, without more, to commence a prosecution.

Our assessment of the historical rationale underlying the "without delay" guarantee in Article I, section 10, also supports our conclusion that the constitutional right attaches when a prosecution actually is commenced. As this court explained in *State v. Harberts*, 331 Or 72, 11 P3d 641 (2000), the principal historical reason that the constitution guarantees all persons the right to a speedy and impartial trial is to

---

[7] The qualification in the statute referring to justices of the peace is not to the contrary. Unlike proceedings in the regular trial courts, justice court proceedings could begin with a "complaint." An Act Relating to Election of Justices of the Peace, and Constables, and to Proceedings in Justices' Courts, ch II, § 200, in *The Statutes of Oregon* (1855), p 325. However, we have found no provision for trying any crime charged by indictment in a justice court. Moreover, the offense charged in justice court had to be tried within one day after the accused was brought before the court, "unless continued for cause." *Id.* at § 202. It thus would appear that justice court proceedings would not have been considered as significant to the authors of the Oregon Constitution in crafting the right to have justice administered "without delay" under Article I, section 10.

prevent prolonged pretrial incarceration.[8] *Id.* at 82. Such protection is not necessary before an official action directly empowers the prosecution, without more, to take the defendant to trial.

Based on the foregoing, we conclude that an official action that is sufficient, standing alone, to commence a prosecution starts the running of the "without delay" clock. As noted, the only such action at the time of statehood was an indictment. However, times have changed. To determine what kind of official action meets that description today, we must turn elsewhere. That inquiry takes us to Article VII (Amended), section 5, of the Oregon Constitution, which informs us of the procedures that are required to commence a felony proceeding.[9]

Article VII (Amended), section 5, of the Oregon Constitution provides, in part:

"(3)   Except as provided in subsections (4) and (5) of this section, a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury.

"(4)   The district attorney may charge a person on an information filed in circuit court of a crime punishable as a felony if the person appears before the judge of the circuit court and knowingly waives indictment.

"(5)   The district attorney may charge a person on an information filed in circuit court if, after a preliminary hearing before a magistrate, the person has been held to answer upon a showing of probable cause that a crime punishable as a felony has been committed and that the person

---

[8] Apart from the foregoing, the court in *Harberts* observed that there is no record of any discussion of the phrase "without delay" in connection with the adoption of Article I, section 10, of the Oregon Constitution. *Harberts*, 331 Or at 83.

[9] Murder is, of course, a felony. The complainant's information in this case was filed in district court—a court that did not have jurisdiction to try felonies. ORS 46.040 (1985) (district courts have same criminal jurisdiction as justice's courts and concurrent jurisdiction with circuit courts over misdemeanors committed or triable in their counties); ORS 51.040 (1985) (justice's courts have jurisdiction over certain crimes committed or triable in their counties, including theft, assault, and various misdemeanors, but not including murder). This case does not present the issue whether the filing of a complainant's information like that filed in this case would be sufficient to start the "without delay" requirement to run with respect to a misdemeanor, and we express no opinion as to that issue.

has committed it, or if the person knowingly waives preliminary hearing."

Under Article VII (Amended), section 5, then, felonies are to be tried in circuit court, and an indictment generally is necessary to commence a felony prosecution. Absent a knowing waiver of indictment, a finding of probable cause after a preliminary hearing, or a knowing waiver of the right to a preliminary hearing, a defendant cannot be charged with a felony on an information alone. *See State v. Clark*, 291 Or 231, 233-34, 630 P2d 810 (1981) (district attorney may charge person on information filed in circuit court "only after a showing of probable cause in a preliminary hearing before a magistrate, unless the person waives indictment or waives the preliminary hearing").[10]

Defendant contends that the "without delay" clock begins to tick when the jurisdiction of the trial court is invoked, that is, when an "action" is commenced. He asserts that that occurred when the police officer filed the complainant's information in this case in 1987. In support of that position, defendant relies on ORS 131.005(4), which defines "complainant's information" and states that a "complainant's information serves to commence an action." The Court of Appeals seems to have agreed with that analysis, insofar as it found persuasive the fact that the complainant's information is one of three types of accusatory instruments defined in ORS 131.005(1) (" 'accusatory instrument' means a grand jury indictment, an information or a complaint"), coupled with the fact that the information was duly executed by a police officer in this case. Based on the foregoing, the Court of

---

[10] This court has stated that the requirement of a preliminary hearing as a predicate to charging a person on an information offers a suspect "a panoply of procedural guarantees [to] protect the person's right to contest the evidence of probable cause that he has committed a felony and his right not to become a witness against himself." *Clark*, 291 Or at 234. The preliminary hearing process also guarantees a suspect's rights to the assistance of counsel, to subpoena witnesses, to cross-examine adverse witnesses, to make an unsworn statement subject only to limited questioning by the magistrate, and to the judgment of a trained judicial officer in determining whether probable cause exists for the prosecution. *Id.* Those rights are guaranteed by statute and constitute the formalities that must either be observed or affirmatively waived before a district attorney may charge a person on an information. *Id.* (citing statutory authorities for rights at preliminary hearings).

Appeals held that, "[c]onsequently, that document constitutes a legally effective accusatory instrument sufficient to trigger the speedy trial protections of Article I, section 10." *Vasquez*, 177 Or App at 484.

That analysis misses the mark. The fact that applicable statutes define a "complainant's information" as an "accusatory instrument" does not control our application or interpretation of an original provision of the Oregon Constitution. Instead, the pertinent inquiry is whether the state, without taking any other procedural steps, could have brought defendant to trial under that document. As we have explained, defendant could not have been brought to trial under a complainant's information in 1855. Neither could he have been brought to trial under the complainant's information that was filed in this case in 1987, both because it was filed in district court and because there was no waiver of his right to an indictment or a preliminary hearing.[11]

Finally, the Court of Appeals found support for its position that an information triggers the protections of Article I, section 10, in the passing reference to an "information" that we pointed out earlier in our discussion of *State v. Vawter*. As noted, in *Vawter*, this court counted the elapsed time by reference to the date on which "an information of felony was filed against the defendant." *Vawter*, 236 at 92. The Court of Appeals deemed that passing reference to an information dispositive, *Vasquez*, 177 Or App at 484, but we do not. In *Vawter*, the court did not explain why it used that date for purposes of calculating the delay; in fact, the court did not find the date of the filing of the information important enough to include it among the facts set out at the beginning of the opinion. The issue was not argued, the comment had no pertinence to anything else that the court had to deal with, and the case was decided on other grounds. We conclude that the reference was *dictum*; we decline to follow it.

To summarize, none of the analytical grounds used by the Court of Appeals supports its decision. Instead, and contrary to the Court of Appeals' view, the text of Article I,

---

[11] The relevant statute provides the same outcome. ORS 131.005(4), defining a "complainant's information," provides that a "complainant's information serves to commence an action, *but not as a basis for prosecution thereof.*" (Emphasis added.)

section 10, and of Article VII (Amended), section 5, when taken together, demonstrate that the state is not in a position constitutionally to "administer justice" before a defendant either is charged by an indictment or one of the constitutionally prescribed procedures that are alternatives to an indictment has been followed. It follows that the speedy trial guarantee of Article I, section 10, does not attach until that point.

In the present case, defendant was not arrested for the Torres murder after the investigating police officer filed the complainant's information in the Umatilla County District Court in 1987 and obtained the arrest warrant, the district court did not have jurisdiction to try the alleged offense, no preliminary hearing was held in connection with the 1987 information, and defendant neither waived indictment nor waived preliminary hearing. Thus, the constitutional prerequisites for a felony prosecution were absent at the time the complainant's information was filed, and that instrument was not sufficient to commence a prosecution of defendant for murder. It follows that defendant suffered no restraint of his liberty as a result of the filing of the information[12] and further proceedings were necessary to subject him to such a restraint. In light of the foregoing, we hold that the 1987 filing of the complainant's information was not an event that triggered defendant's right to have justice administered "without delay" under Article I, section 10, of the Oregon Constitution. The Court of Appeals' contrary conclusion was in error.

Defendant fares no better under the Sixth Amendment. *See, e.g., United States v. Loud Hawk*, 474 US 302, 310, 106 S Ct 648, 88 L Ed 2d 640 (1986) (quoting *United States v. Marion*, 404 US 307, 320, 92 S Ct 455, 30 L Ed 2d 4768 (1971) ("[W]hen no indictment is outstanding, only the actual restraints imposed by arrest and holding to answer a criminal charge * * * engage the particular protections of the

---

[12] In this case, of course, defendant's "liberty" was restrained shortly after he committed the murder on which this case is based, when he was arrested in connection with the California murder, and it remains restrained today, in the sense that defendant has not been free since that time. However, the relevant inquiry for purposes of our analysis in this case is whether defendant suffered any *additional* restraint on his liberty as a result of the filing of the 1987 complainant's information. He did not.

speedy trial provision of the Sixth Amendment."). It follows that the decision of the Court of Appeals must be reversed.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.